James B. Hinde et al., Plaintiffs in Error, and James B. Hinde and Jacob Lesker et al., Plaintiffs in Error, *v.* The Wabash Navigation Company, Defendants in Error.

### ERROR TO WABASH.

Where the charter of a navigation company authorized them to enter upon the lands adjoining the work to be constructed, and take material therefrom, leaving the owner of the land to apply to the circuit court for an assessment of damages, the owner of material taken by contractors in the employ of the

company, under the provisions of the charter which is applied to the works to be constructed, may recover compensation from the company for the material so taken.

In these cases, similar proceedings were taken to recover damages, by assessment, for certain timber and material taken and used by the defendants in error, the property of the plaintiffs in error. The defendants in error pleaded that a portion of the material for which compensation was sought was taken and used by Samuel and Isaac Culbertson, who were contractors with the defendants in error for the construction of the dam and lock about which the material had been used, and that any entry upon the lands in question, by the said Culbertsons, was unauthorized by the terms of the contract between them and the defendants in error. A portion of the material used had been taken by the defendants after the contract with the Culbertsons had been declared abandoned. Commissioners were appointed, who assessed the damages in separate items, distinguishing between that done by the defendants and that done by the Culbertsons, as contractors. The circuit court, on the report of the commissioners, confirmed only so much of it as awarded damages for the material taken by the defendants, rejecting the damages assessed for the period when the Culbertsons were contractors.

These causes were heard before S. S. MARSHALL, Judge, at August term, 1852, of the Wabash Circuit Court.

C. CONSTABLE, for plaintiffs in error.

W. H. UNDERWOOD and ROBERTS, for defendants in error.

CATON, J. The precise question raised in these cases was argued and decided at the last term of this court in this division, in the case of Lesher v. the same defendants. But as the question was a new one, and of considerable importance, in view of the many works of internal improvements which are in progress in this State under charters in some respects similar to the one presented in this case, we thought it proper to allow the question to be again argued, that it might be again carefully considered. It has been thus considered, and we are still of opinion that it was properly decided.

It is true that a contractor is not, in all cases and for all purposes, to be considered the servant of the principal or employer, so as to subject the latter to liability for his tortious acts; and this is generally the case where the contract is in reference to

the management of personal property. If I hire a drover to drive a drove of cattle to market for me, and in the execution of his contract, he or his servants commit a trespass, or allow the cattle to commit a trespass, I am not liable; a different rule, however, has been recognized by high authority, where the contract is to be performed upon fixed and immovable property. Thus in the case of Slye *v.* Edgely, 6 Esp. 6, the owner of premises contracted with a bricklayer to make a sewer, which the latter negligently left open, in consequence of which the plaintiff fell in and broke his leg; and the owner was held responsible for this negligence of the contractor. In Bush *v.* Steinman, 1 Bos. & Pull. 404, the owner of a house contracted with a surveyor to make certain improvements for a stipulated price. The surveyor sublet the whole contract to a carpenter. The carpenter contracted with a bricklayer to do a part of the work, and the bricklayer contracted with a lime-burner to furnish the lime. The servant of the lime-burner placed the lime in the road near the premises, by which the plaintiff was injured; and it was held, after much consideration, that the owner of the house was liable for this tortious act of the servant of the fourth subcontractor. These cases were referred to by Littledale, J., in the celebrated case of Laugher *v.* Pointer, 5 Barn. & Cres. 547, where he points out the distinction between the acts of contractors, where the contracts are made in reference to or are connected with fixed and immovable property, and where they relate to personal or movable property. That was a case where the owner of a carriage hired a stable-keeper to furnish him for a day with horses and a driver, and through the carelessness of the driver the plaintiff was injured, and the court was equally divided as to the liability of the owner of the carriage. That case was considered in 1826. In 1840, that precise question was again up in the case of Quarman *v.* Burnett, 6 Meeson & Welsby, 499, when the court unanimously decided that the owners of the carriage were not liable for the carelessness of the driver. In that case, Parke, B., who delivered the opinion of the court, referred to the two first cases with approbation. He said: " It is true that there are cases — for instance that of Bush *v.* Steinman, Slye *v.* Edgely, and others, perhaps among them may be classed the recent case of Randleson *v.* Murray, 8 Ad. & Ell. 109 — in which the occupiers of land or buildings have been held responsible for acts of others than their servants, done upon or near or in respect of their property. But these cases are well distinguished by my brother Littledale, in his very able judgment in Laugher *v.* Pointer."

Again, in 1842, in the case of Rapson *v.* Cubit, 9 Mees. & Wels. 709, the same cases were referred to and the distinction again approved by the court, who quote from the opinion of Littledale as follows: "The rule of law may be that in all cases where a man is in possession of fixed property, he must take care that his property is so used and managed that other persons are not injured, and that, whether his property be managed by his own immediate servants or by contractors or their servants. The injuries done upon land or buildings are in the nature of nuisances, for which the occupier ought to be chargeable when occasioned by any acts of persons whom he brings upon the premises. The use of the premises is confined by the law to himself, and he should take care not to bring any persons there who do any mischief to others."

Thus we see that cases are not wanting to maintain, upon common law principles, the liability of the navigation company, who are the owners of the improvement, for the tortious acts of the contractors done in the execution of their contract, and near to and in respect of the company's premises. Here the timber cut was immediately adjoining the works of the company, and was placed upon and attached to them, and directly enhanced their value. But beyond this, the entire work was executed under the immediate supervision of the engineer of the company, which gave at least the apparent sanction of the company to the acts of the contractors. I have referred to these few cases to show that the liability of the company might be maintained upon common law authority, but without the intention of placing our decision upon that ground. Indeed these are not common law actions to recover damages, but they are special proceedings under the charter of the company, and they cannot be sustained unless the liability is created by the charter.

By the charter, as was stated in our former decision, Lesher *v.* Wabash Navigation Company, 14 Ill. 85, the company might enter upon the lands adjoining to their works and take therefrom necessary materials, and the owner of the land might file his petition in the circuit court, to have appraisers appointed to assess his damages, for which the owner was entitled to a judgment against the corporation. It is unnecessary now to inquire whether the legislature could authorize the corporation to enter upon the land of individuals and take therefrom material, which was required for the work, without first making compensation to the owner, at least none but the owner could object to the exercise of such power, and when he allows his property to be taken for the use of the work, without objecting

that the authority·was unlawfully conferred upon the company, he may seek his remedy in the mode provided in the charter, which professes to give the right. The question, then, arises upon the provisions of the charter. By the charter, the company was authorized to take this timber for the use of the work, and when taken the owner might seek his remedy under this proceeding. The company was not required by the charter to ask his consent, nor was he bound to forbid them in order to secure his remedy. The timber was taken by those who were in the employ of the company and put into the works of the company, as the charter authorized. We are still of opinion that the owner had the right to consider this as done by the company, in the exercise of the right conferred by the charter. Although contractors, they were, when exercising the rights conferred by the charter, the agents or servants of the company; although they might not be the servants of the company so as to render the corporation liable for their acts, whenever they went beyond the provisions of the charter, and performed acts which were not done in the exercise of the powers conferred upon the company by the charter. The same provision applies to damages done to land by excavations for or the erection of the locks or dams upon the land of an individual. Suppose this claim were made for the value of the land upon which a lock had been built by these contractors. In occupying the ground for the lock the contractors were certainly the agents of the company, and yet the same clause of the charter which authorized them to occupy the ground for the lock, also authorized them to take this timber. The same law which required the owner to submit to, and authorized the contractors to do one of those acts, also required him to submit to the other, and provided for the same mode of redress. If the contractors were authorized to do one act, they were equally authorized to do the other, and the owner had just as much reason to suppose that one was done under the charter as the other. Suppose a railroad company is authorized to condemn the right of way one hundred feet wide across my land, and before condemnation the engineer goes on and lays out the track of a proper width, and for an embankment four feet high, and under those specifications a contract is let, without any provision in it as to where the earth is to be procured for the embankment, and the contractor excavates the adjoining land within the hundred feet to make the embankment, shall I be told by the company that ·they only want the right of way upon which the embankment is actually made, and be turned round to an irresponsible contractor for the damage done by digging up my soil, although

when I saw it done I knew the company had the right to take that very soil for that very purpose, whether I willed it or not, and that their charter compelled them to pay me for it? If it be said that custom has created an implied understanding in such a case, that the company and not the contractor shall furnish the earth with which to make the embankment, my neighbor, whose rock were taken from his quarry within the hundred feet by a contractor to construct a bridge, would feel it very unjust that his rights were not equally protected. The company have the right of determining who shall go upon their works, and for them exercise the rights conferred upon them; and, as between themselves and the contractor, may make such arrangements as they please, while the owner of the land, who may be injured by it, is perfectly powerless and liable to be intruded upon by any one whom the company sees fit to send to do the work, and it is but just and right that whoever does that work as authorized to be done by the charter, should be held to be the agent of the company for that purpose; especially when done on or near the visible possessions of the company. For acts done at a distance from the visible works of the company or line of the road, and where the owner of the property taken might not reasonably suppose that it was taken under the provisions of the charter authorizing it to be taken, a different rule of responsibility most likely should prevail; but when done upon or near the work authorized to be constructed, and the property taken is such as the charter authorizes the company to take, those who take it for the execution of the work should be held to take it under the charter, and to be the servants or agents of the company, unless the owner is notified to the contrary, that he may timely seek other means for protecting his interests. If there be a propriety in holding the owner of premises responsible for the tortious acts of the contractor, while engaged in fulfilling his contract upon or near or in respect of the premises, how much greater the propriety of holding the owner responsible for those acts of the contractor in the execution of his work, which the owner was authorized to do by special legislation, in order to enable him to do that very work. We are still well satisfied that the owners of the premises were justified in presuming, when they saw this timber taken by those in the employ of the company and placed in their works, that it was taken under the authority conferred by their charter, and that he might seek his remedy against them in the mode provided by the charter. The work was executed by the contractors under the immediate supervision and direction of the engineer of the company, who must have been aware of the provisions of the charter authorizing the lumber to

7 *

be taken, and cognizant of the fact that it was being taken; and had it not been the design of the company to see them paid for it, it was his duty to give notice that it was not taken under the authority conferred by the charter, that the parties interested might at once put a stop to the trespass, or otherwise provide for their security. This rule, we are satisfied, will better promote the interest of companies constructing public works under similar charters as well as the owners of land, or material taken for the use of the works. A different rule would at once compel every proprietor of land or material wanted for such purposes, to resist the appropriation until he had secured his compensation, no matter how favorably inclined he might be to promote the progress of the work. The judgment of the circuit court must be reversed, and judgments entered in this court for the value of the lumber taken, as shown by the agreed case.

*Judgment reversed.*