JONATHAN Y. SCAMMON *et al.*, Plaintiffs in Error, *v.* THE CITY OF CHICAGO, Defendant in Error.

ERROR TO COOK COUNTY COURT OF COMMON PLEAS.

An owner of land who contracts with a skillful party to erect a building thereon, and who for that purpose surrenders the premises for the uses of the contractor, is not, during the erection of the building, answerable in damages for an accident which occurs to a stranger passing by. If the sufferer has any recourse, it is against the contractor, or the corporation within which the property is situated.

The parties who may be accused of negligence under such circumstances, are not the servants of the owner of the premises, but of the contractor.

THIS was an action on the case, brought by the city against the plaintiffs in error, to recover from them an amount of damages, covered by a judgment against the city in favor of one Ormsby. The declaration contained four counts.

First count alleged in substance, that plaintiff (defendant in error) under its charter had exclusive power over the streets of the city, and was, by law, bound to prevent the obstruction of them.

That plaintiffs in error owned the premises at south-east corner of Lake and Clark streets, common highways in said city,

and on the 15th day of September, 1859, wrongfully dug and opened in the streets, next the corner of the building, a large pit, forty feet long, ten feet deep, and four feet wide, which was an area for light and access to the basement of said building, and suffered the same to remain uncovered during the day and night time, without any warning of danger to persons passing; by means whereof, etc., on the day aforesaid, between eight and nine o'clock in the evening, one Ormsby, then exercising ordinary care for his personal safety, while passing along said street, fell into said hole and was greatly injured.

Wherefore he brought suit against the city of Chicago, November 10th, 1859, in the Superior Court of Chicago, and on July 14th, 1860, he recovered a judgment in that action for $1,000 damages, and costs $140.85, which defendant in error paid on September 29th, 1860, and brought this suit to recover back that money.

The second and third counts are substantially like the first.

The fourth count contains substantially the same averments as the first, as to the ownership and dominion of the streets in the city of Chicago, the ownership of the premises, the digging of a hole or pit around the same for an area, the accident to Ormsby, and the suit brought by him, with the further averment that due and proper notice was given by defendant in error, to plaintiffs in error, of the pendency and purpose of that suit; that they were required to assist in the defense of it, a sufficient time beforehand to enable them to do so; that they neglected to defend it.

That defendant in error did defend it with proper care, with result as stated in first count, and general allegation of payment of that judgment and costs to Ormsby.

Scammon and Clark only, pleaded to the action, the general issue.

A default was entered against Scammon, which was set aside.

Trial by jury. Verdict for defendant in error, $1,189.33. Motion for new trial overruled, and judgment on the verdict.

The bill of exceptions shows, that it was stipulated on the trial, that Scammon and Clark, were, at the time of the accident to Ormsby, the owners of ten-twelfths of the premises described in the declaration, fronting and abutting upon the streets as alleged. That John Forsythe was Scammon's agent at the time of the accident, and in May, 1860; also, that Ormsby recovered a judgment against defendant in error for the cause, amount, and at the time alleged. That Scammon and Clark had notice of the pendency of that suit, were required to defend it, and did not.

*Charles H. Ormsby* testified, that he was in Chicago during

the week of the National Fair in September, 1859, and while walking along the south-east corner of Lake and Clark streets, made a misstep through the iron grating, fell into the area, and broke his leg.

This was at the corner of the building; the grating was down to the corner, and the iron that goes in at the corner opposite. It was in the evening, and a little dark; there was quite a crowd on the street, the moon shining; supposed he was stepping on a plate of iron like the rest.

That he brought suit against the city of Chicago, and recovered a judgment, which had been paid him.

It was admitted this was the suit named in the declaration, and that it was an action on the case against the city for negligently suffering the sidewalk to be out of repair.

He further testified, the sidewalk was crowded with people when he fell in.

A plat of the premises, showing the size and condition of the sidewalk and area, was here put in evidence.

He further testified, that he fell in at the corner of the building, through the space covered by the iron plate; there was no protection there; the grates were down each way, but the corner triangle was open. He stepped a little to one side from the crowd pushing him, to give room, and, as he supposed, stepped on an iron plate. The walls of the building were up, but it was not completed.

*Charles E. Bennet* testified, that he observed these buildings pretty much every day as they were going up; passed them five or six times a day; remember when the grating was put up and the flag stones laid; the grate was up before the plate; probably the plate was too large or too small, and so the hole was left a part of the time covered and part not; think it was so for several days; can't say whether it was a week, or four days.

There was no side railing there; believe there was some mistake in the size of the plate.

The sidewalk here was the usual width in the city, ten or twelve feet wide; saw the plate pretty much every day; saw workmen about at one time, at another time none; can't say they were away from that place entirely at any time; the time when the hole was open was just before the time when the plate was fixed on as it is now.

*W. J. Ellenwood* testified, that in September, 1859, he used to notice the sidewalk around the building at the corner, as he passed there; never saw the plate till it was placed; saw the open space for the plate until it was covered; think it was a week after the space was covered before the plate was put in; it was open nearly every time I passed after the grating was

laid; after Ormsby fell in, I saw a board there occasionally; think it one of the most frequented streets in the city; this space opened into an area leading into the basement, and was for lighting the basement, and for stairway, but there was no stairway there; never noticed any board before Ormsby fell in.

That he passed there six or seven times a day; that it was about a week after the grate was laid before the plate was put down; sometimes the space was covered, sometimes boards were over it.

*E. Burling* testified: That he is an architect, and noticed the construction of the sidewalk in question; thinks he noticed the space for the iron grate at the corner, but can't say how long.

*A. D. Titsworth* then testified: That he knew the premises in September, 1859; his place of business was six doors off; passed there frequently; can't say how long that place was open; have seen it in different conditions, and when protection of boards and boxes was put up around the area; have noticed the place at the corner without protection; the whole area around the sidewalk was frequently protected by setting up boards and boxes; this was before the grating was put up.

Defendant in error then offered in evidence the ordinances of the city of Chicago, being Sections 1, 2, 3, Art. 4, page 302, "Municipal Laws;" also Sec. 1, Art. 1, page 366, same volume. To which defendant objected, as irrelevant to this case. The objection was overruled.

It was then stipulated, that said ordinances should be considered a part of the record, and read and referred to the Supreme Court from the volume of Municipal Laws of Chicago.

It was admitted that the Ormsby judgment was for $1,000 damages, and costs $140.85.

Defendants then offered in evidence an ordinance of the city of Chicago, entitled "Obstructions," article 2, page 400, of Municipal Laws. Also one entitled, "For raising sidewalks," passed March 22nd, 1858, page 99 of New Ordinances.

*John Forsythe* then testified for defendants below: That he knew plaintiffs in error; that Scammon was in Europe from July, 1857, to May, 1860; that he knew the premises in question; had charge of Scammon and Clark's interest in them; the old buildings were taken down and new ones put up in 1859; the mason work was all contracted to Hambleton and Goodman, and the iron work to N. S. Bouton.

Witness produced the contracts for the work, the execution of which was admitted; but defendant in error objected to their admission, on the ground that they did not protect the owners from liability. Objection overruled. Contracts read in evidence, subject to instructions.

The contract between Hambleton & Goodman, and Scammon, Clark and Boone, trustees for Lucy Russell, was to take down the old saloon buildings, south-east corner of Lake and Clark streets, Chicago, and to erect and complete a new four-story and basement brick building, with new sidewalks and appurtenances complete, according to the plans and specifications, made part of the contract, Hambleton and Goodman to do all the work and furnish all the materials, all to be completed by September 15th, 1859.

The rest of the contract provides for the amount and time of payment for doing said work.

And further, that Hambleton and Goodman should have possession of the premises on the 1st day of May, 1859, and commence the work at that date.

The next contract was between N. S. Bouton, iron worker, and Scammon *et al.*, by which Bouton agreed to make, deliver and set up complete, the iron columns for basement and first story, together with all lintels, sills, and cornice for first story, and all gratings, railings, steps and platform, and to make, furnish and deliver, at the buildings, all wrought and cast iron work complete, as specified and shown in the drawings made and prepared for a building to be erected at the south-east corner of Lake and Clark streets, Chicago, according to the specifications which were made part of the contract. Such work and materials to be of the best quality, properly fitted and put up in substantial and best manner. The entire iron work to be completed so as to cause no delay in the carpenter and mason work.

In consideration of such iron work being done in the manner and time mentioned, the work to be of the best kind and quality, Scammon and others agreed to pay Bouton $3,950, as specified in the latter part of said contract.

Forsythe further testified: That Hambleton and Goodman did the work under their contracts, and began it about the 1st of May, 1859; the building was not complete when Ormsby was injured; John M. Van Osdel had the entire superintendence of taking down the old building and erecting the new one. Scammon had no other agent than myself, and neither he nor Mr. Clark had any direction of the work; Clark street was raised to grade in the summer of 1859; the earth excavated from the old building was used to fill it; the raising of Clark street left the sidewalks around the old building so much below grade that we could not use it, and had to tear down the old building; it had to be raised five feet to meet the grade; the sidewalk around the building was eleven feet wide; the area from the sidewalk to the building was four feet eight or nine inches wide.

Witness thinks that the building comes to the line of the street; that area and sidewalk are in the street; Hambleton and Goodman constructed the sidewalks and put down the flagging; building was not complete when Ormsby was injured; the contractors then had the occupancy of the premises, except the two eastern stores; the two at the corner were not occupied; Bouton had commenced, but had not completed his contract at the time of the accident to Ormsby, but I cannot tell the state of the work at that time and place; Van Osdel had the whole superintendency of the building.

*John M. Van Osdel* testified: That he had been an architect for sixteen years in the city of Chicago; he was superintendent of the work on the premises in question; made the contracts for the proprietors; knew the parties having the contracts; supposed the superintendency of the work included the direction of it; if the contractors did anything wrong, it was my business to have it corrected.

I had agreed with the proprietors to superintend the work; suppose all the directions were given by myself, but did not interfere with the builders as long as they worked according to the contract; did not direct the work at all, unless it was not in accordance with the contract; it was my business to see that the work was done, but not to interfere with the manner in which it was accomplished; suppose the employers gave directions to the workmen; I gave none, except when I saw the work going wrong; I had no control over the workmen; I know the contractors, some of them several years; they were selected from the mass of builders in town on account of their skill; we considered them first class contractors, and experienced.

Knew the condition of the premises at the time of the accident to Ormsby; passed them two or three times a day; was there the day of the accident and the day after; the iron gratings were down; the corner plate was not. The stone covering the angle is one stone, on a level with the sidewalk; it was then in place; the iron is about seven inches above the sidewalk; can't tell when Bouton began laying down the iron work; it was about a week before the accident to Ormsby; the buildings were not completed; my impression is, that there was no delay in the progress of the work; it went on so diligently that I found no fault with it.

I have been extensively engaged in the erection of buildings and construction of sidewalks in this city.

Plaintiff below admitted that none of the city officers interfered to prohibit the progress of the work, or made any com-

plaints or expressed objection to the parties in interest to the construction of the work, in the manner in which the work was done.

Van Osdel further testified : That Reuben Cleveland was superintendent of public works for the city that year; don't recollect seeing him there during the progress of the work, or any other of the city officers ; it is about six years since areas were madeunder side walks ; before that, the grade was down too near the level of the water to allow them ; since the grade was raised, we are enabled to have basements, and areas to light them ; this area was for light and access to the corner basement room, by steps down on both streets ; this area was constructed in the ordinary manner; we have constructed many like it; I have constructed more than a mile in this city without objection on the part of the city.

Plaintiff below objected to all above evidence; objection overruled.

The space covered by the plate was open the day after the accident; it was open then and had been before; don't know how long, or that it was covered at all from the time the grate was put up till the plate was finally fixed on.

Sidewalks can be and frequently are constructed without areas ; they are to give light and air to the basement of the building ; are not necessary for the sidewalk but for the benefit of the building.

*Henry Smith* then testified for the defendants : That he worked for Bouton in September, 1859.

(Plaintiff below objected to the competency of this witness, because he was an employee of Bouton on the work, and liable to Bouton for any judgment recovered against him for witness' negligence. Objection overruled; witness permitted to testify; exception by the plaintiff.)

He then testified, that he worked for Bouton by the day on the buildings, at the corner of Lake and Clark streets ; that he put down the iron gratings and railings; that he was Bouton's foreman ; that he directed him in the execution of the work, and had no orders from anybody else. Knew of the accident to Ormsby, and was then working near the corner where the plate is ; the gratings were down.

Don't know the time when he fell in, but when I heard of it, the grating had been up one or two days. Had been engaged on the iron work about ten days ; we left work at night at six o'clock ; I had a boy with me whom I directed what to do ; Bouton employed and paid him ; when I left the work at night I put boards over the frame across the corner ; Bouton told me

to put some boards over there to cover it up; I covered it up every night when I left it; we began work about seven o'clock in the morning.

He was a witness in the Ormsby case; always covered the grates myself; was engaged four or five weeks in the iron work; place at the corner was open a week or ten days before the plate was finally put upon it; George Hare worked with me all the time; don't know where he is; either he or I covered the place every night when we left work; could not keep the place covered all the time when at work; had to keep it open during the day time; sometimes the carpenters took the boards off; they used the lumber for scantling.

*Daniel Goodman* then testified, that he was one of the contractors for doing the mason work upon the buildings, including the sidewalks and area.

(Plaintiff below objected to this witness on ground of interest; objection overruled; witness permitted to testify, and exception.)

In the summer of 1859 I was engaged on the buildings in question as a mason and contractor; I excavated the lot; part of the earth thrown out was deposited in Clark street, opposite the premises; Clark street was raised to the new grade along with the building in that season; it was raised five or six feet; the old sidewalk was five or six feet below the new grade; we had a permit from the mayor of the city to use the street for building purposes; I cannot find that permit now, but it was in substance like this one:

*" Chicago, August 16th,* 1859.

" Permit Hambleton & Goodman to occupy one-third of the street at the corner of Wells and Lake for building purposes. Subject to revocation by the mayor,

JOHN C. HAINES.

Per CHAPMAN."

One permit was to allow use of a portion of the street for placing building materials.

(Plaintiff below objected to evidence of the permit, because it had no reference to the area or sidewalk; and the mayor had no authority to give permits for building sidewalks and areas. Objection overruled.)

Mr. Cleveland was city superintendent in that season; I saw him about the buildings several times that season; I exhibited the permit to him at the time, and to several other of the city officers; they asked for it more than once, and no objection was made to its sufficiency; don't know who was then street commissioner for that division, or alderman of that ward; I think our permit was till the end of our contract; it was signed John C. Haines, Mayor, by Chapman.

*John C. Haines* then testified, that he was mayor of the city of Chicago in 1859; that E. H. Chapman was his clerk, employed by the city; he was authorized to sign for me permits for the removal of buildings, and for placing building materials in the streets for building purposes.

This was all the evidence in the case.

The plaintiff then asked the following instructions, which the court gave:

1.  The jury are instructed, that if they find for the plaintiffs upon the evidence and facts, then they must find for the full amount of the judgment and costs, and interest on the judgment; it does not matter what were the relative proportions or interests of the defendants in the property.

2.  If the jury are satisfied, from the evidence, that the hole or opening or excavation, where Ormsby fell and was injured, was one which rendered the sidewalk dangerous, and detracted from the safety of travelers, then such hole or opening was a nuisance, and the defendants, if shown by the evidence, to be owners of the premises adjoining, and for the benefit of which the excavation was made, are responsible for all damages resulting therefrom to the city, if they caused the excavation to be made for the benefit of their own premises alone, and for no other purpose, and if the city was not in fault, and did nothing to produce the injury, and neglected nothing on its part.

3.  If the opening or area into which Ormsby fell, was contracted for and made for the especial benefit of the property to which it belonged, the owners of that property, if they procured the work to be done, were bound to keep the area or opening covered or protected in such a manner that it would be as safe as if the area had not been made, or at least so that the public should not suffer from the encroachment upon the street.

4.  If the jury believe, from the evidence, that there was an ordinance of the city, requiring permission from the city or its officers, for the construction of areas, or the building of sidewalks up to grade so as to make areas, then the defendants were not excused or relieved from obtaining such permission or authority, by the fact that areas have been made by other persons in the city without permission.

5.  It is admitted in this case that due notice of the pendency of Ormsby's suit was given; such notice being given to and received by the defendants, made them, so far, parties to the Ormsby suit, so that they are bound conclusively by any fact essential to, and established by, the verdict and judgment in the Ormsby case. The jury must consider as settled in this case, the fact that such judgment was recovered; that Ormsby suffered injury to the amount of one thousand dollars; that he was

in the exercise of due and proper care when the injury happened to him, and that the hole or opening into which he fell, was negligently suffered to remain unguarded and unprotected, in consequence of which, Ormsby fell in and was injured.

6. If the jury should find, upon the facts and evidence in the case, for the plaintiff, then the plaintiff is entitled to a verdict for the amount of the judgment and costs thereof in the Ormsby case, and interest on the judgment from its date, provided they find, from the evidence, the city has paid such judgment and costs.

The defendants then asked the following instructions:

1. If the jury believe, from the evidence, that defendants employed competent and skillful contractors to construct the buildings upon the premises described in the declaration, including the sidewalk and area around them, and that while the contractors were engaged in the work, and were in the occupancy of said premises for that purpose, (and that defendants gave no orders to said contractors or their workmen, as to the manner of doing said work,) the injury occurred to Ormsby from the negligence of said contractors or their workmen, they will find for the defendants.

Modification added by court: This is so, unless the encroachments made upon the streets were not *manifestly necessary;* and even, if *necessary*, it should appear that they were reasonable under the circumstances, and even if *reasonable and necessary*, if the encroachments extended further into the streets, or continued longer than was necessary and reasonable, or if necessary and reasonable, if negligently left in an unsafe condition, the encroachments became a nuisance, and defendants are liable for nuisances erected on their own premises by their consent.

2. If the jury believe, from the evidence, that the sidewalk around defendants' premises described in the declaration, was such an one as was required by the ordinances of the city of Chicago, and that the area around defendants' buildings on said premises was such an one as has been usually constructed and used in said city since the establishment of the present grades of the streets and sidewalks in said city, without objection by the said city of Chicago, then the defendants had a right to construct such sidewalk and area, and to employ the usual and ordinary means for that purpose; and if they further believe, from the evidence, that defendants employed competent and skillful contractors to do that work, and if while such contractors were prosecuting the work, without the interference or direction of defendants, an injury happened to Ormsby, from

28

the negligence of said contractors or their workmen, they will find for the defendants.

Modification by court: This is so, subject to the qualification made to the first instruction asked by defendants and given by the court.

3. The record and proceedings in the case of Ormsby against the city of Chicago, are no evidence of negligence on the part of the defendants in this action.

Modification by court: That record established negligence, but does not establish that defendants were guilty of negligence.

4. If the jury believe, from the evidence, that the injury to Ormsby occurred from equal negligence on the part of plaintiff and defendants in this action, the plaintiff cannot recover, and they will find for the defendants.

5. If the jury believe, from the evidence, that the defendants employed competent and skillful contractors to do a lawful and proper work, and that defendants did not control or interfere with said contractors in the performance of said work, then defendants are not liable for the injury happening to Ormsby from the negligence of said contractors or their workmen.

Modification by court: This is so, subject to the qualification written by the court at the end of the first of defendants' instructions.

6. If the jury believe, from the evidence, that defendants employed competent and skillful contractors to construct the buildings on defendants' premises, and the sidewalks and area around the same, and that this was a lawful work, then defendants and said contractors had a right to use all lawful and proper means to accomplish it. And defendants are not liable for injuries happening to third persons, from the negligence of said contractors or their workmen, while engaged in the prosecution of said work, without the control or interference of the defendants.

Modification by court: This is so, subject to the qualification made to the first instruction as asked by defendants.

7. Defendants are not liable to third persons for injuries happening to them, from the negligence of contractors whom they have employed to do a lawful work upon or around defendants' premises, without the control or interference of defendants as to the manner of doing the work.

Modification by court: This is so, subject to the qualification given by the court, to the first instruction asked by defendants and given by the court.

The defendants then asked instructions eight and nine.

8. The judgment recovered by Ormsby against the city, is

evidence that the city was guilty of negligence in the matter in controversy; and the city cannot maintain this action, brought against these defendants for indemnity, under the circumstances proved in this case.

9.   If the jury believe, from the evidence, that what the defendants authorized to be done, upon and around the premises in question, was lawful, and that the work was let out to contractors who exercised an independent employment under their contracts, but that by the careless or negligent manner in which the work was performed by said contractors, or their workmen, a nuisance was created, the defendants are not responsible for said nuisance, unless the evidence shows that the defendants interfered with or gave directions respecting the manner of doing the work, or that they had notice of the existence of said nuisance, and neglected to remove or abate it.

Which the court refused to give.

The court, of its own motion, then gave the following instructions :

1.   It may not be absolutely *illegal* to make an excavation *in the street* in front of one's own premises; but when one does make such an excavation for the *exclusive benefit of his premises,* whether he does it directly by his own servant, and so makes himself liable for the act of his servant on the principle of respondat superior, or whether he procures such excavation to be made by a contract with a third person, over whom he reserves no control, he is still liable as and for a tort, in case he causes a nuisance, or permits a nuisance, to continue adjoining his premises.

The court instructs the jury in this case, that if they believe the work was done under written contracts, offered in evidence, that the defendants are not liable for any act of negligence of the contractors, except so far as the said defendants authorized an encroachment *upon the street.*

And that if the defendants authorized the contractors to make any encroachment upon the street, without proper authority, then they are liable to the city for all the damages which the city has sustained by reason thereof, if the city has been guilty of no default or neglect, unless the encroachments so made were *manifestly necessary* and were *reasonable in themselves.*

2.   *Necessity* may justify *encroachments* which would otherwise be nuisances.   But the mere *convenience of the owner of a lot abutting on a street* does not entitle him, as a matter of *right*, to appropriate a part of the street without specific authority. He must at least show that the encroachments which he contracts for are reasonable and necessary.   And even if reasonable and necessary, if they, the encroachments, extended further into the

street or continued longer than was necessary and reasonable, or if negligently left in an unsafe condition, they become nuisances. And the owner may be held liable for permitting nuisances to exist or remain on his premises.

The jury ought to find then, whether the excavation or area contracted for and made in the street, was necessary and proper in the erection and construction of the buildings or making the improvement undertaken on the lot of defendant.

And if not, then the defendants are responsible for the nuisance authorized or permitted by them.

And if the jury find that the encroachments were *necessary and reasonable*, then they will inquire whether due care was taken by defendants, or their contractors or other person, to guard the place in which the encroachment had been made, by a fence or other protection, so that persons might pass in security along that way, or avoid the obstructions or excavations placed there by the defendants or their contractors.

3. If the jury are satisfied, from all the evidence, that the defendants employed others to make encroachments upon the public streets of the city, for their own convenience and not from necessity, then they are liable to the city for all damages suffered by defendants' acts in that behalf, whether the work was performed by the defendants' own servants, or through the medium of contractors.

In like manner they would be liable, if they had made such unnecessary or unreasonable encroachments, and failed to take due care to guard the exposed place or encroachment made by them.

Defendants excepted to the instructions given for the plaintiff, the modification of defendants' instructions, the refusal to give the instructions asked by defendants, and the instructions given by the court of its own motion.

Verdict for plaintiff below, $1,189.33. Motion for new trial overruled.

The errors assigned are, that the court gave improper instructions for defendants.

That the court improperly modified defendants' instructions.

That the court refused proper instructions for the defendants below.

That the court gave its own instructions improperly.

That the court erred in overruling the motion for a new trial, and in rendering judgment for plaintiff below.

SCAMMON, McCAGG & FULLER, for Plaintiffs in Error.

T. L. KING, for Defendant in Error.

WALKER, J. It is urged that the contractors and not the owners of the property, are liable for the damages sustained by Ormsby. And that inasmuch as it was not a necessary incident to the improvement, but was produced by the mode in which the work was performed, the appellants discharged their whole duty when they employed competent, skillful and prudent contractors, and can by no means be held liable for any neglect or default of theirs, whilst engaged upon the building or sidewalk. It seems to be conceded that the city was primarily liable, as the law has imposed the duty upon that body to keep the streets and sidewalks in a condition for safe and convenient transit of all persons. It is likewise conceded that the contractors who were engaged in the construction of the work are liable for a want of due care in its completion. But the question is presented, whether the owners of the freehold, by whom the contractors for the performance of the work were employed, are liable to the city.

It is a rule of very general, if not of universal application, that the master is liable for the negligence of his servant, whilst acting under the direction of the master. Then does this case come within the rule? Were these contractors the servants of the owners? That they are not, seems to us apparent. They were not bound to perform the labor under the direction of the owners, or their agents, but under their contract. It was not to them that the contractors looked for directions, but to the agreement. They were bound to furnish the materials and labor, and complete the building within a given time, and the owners had no right to control the selection of the materials or direct when the work should be performed, but only to look to their contract for its performance in pursuance to its terms, conditions and specifications. And the contractors, for the time being, were let into the actual possession and control of the property, and the owners excluded from its occupancy.

It is perfectly apparent that the mere fact that a person is the owner of the fee or the reversion of the premises, cannot create such a liability. If so, the negligence of a tenant for a term of years, a tenant in dower, by the courtesy, or any other tenancy, would create this liability. So of a disseizor or other wrong doer in possession. To hold the remainderman or reversioner liable for such wrongs, would be to enable a tenant or other person in possession, to commit such acts as might be ruinous to the owner. It will hardly be contended, that if the appellants had let these premises to the contractors for a term of years, with the agreement that the rent should be paid by the erection of their building, according to the terms and specifications contained in the agreement, and this accident had occurred, that

the appellants would have been liable to any person. They could by no rule of law, of which we have any knowledge, be liable in such a case.

The reason why the master is rendered liable for the negligent acts of his servant, resulting in injury to others, is because the servant, while he is engaged in the business of the master, is supposed to be acting under and in conformity to his directions, and to hold him to the employment of skillful and prudent servants. The presumption is one of law, and hence cannot be rebutted. But in this case the reason fails, and the presumption must also fail. These contractors, as we have seen, were not working under the directions or control of appellants, but under their contract, and were in no sense their servants. And the appellants had on their part neglected no duty, as they had employed skillful and competent contractors, accustomed to such business, and fully acquainted with the dangers incident to its performance. Then upon what principle, or by force of what rule, is it that liability is incurred? We are unable to perceive any which creates it.

All liability for injury sustained is based upon the theory, that the party liable has committed a wrong, or neglected some duty. That direct or consequential injury has resulted from the employment of immediate force, or the negligent performance of some legal duty, or in the negligent use of persons or property, whereby an injury has resulted to another. It seems to us that the doctrine would be productive of great wrong, to hold that when owners of real estate, who contract with reliable, competent and skillful builders, and deliver the premises into the actual exclusive possession of the contractors for a definite period, and when neither the contractors or their servants are under the control of the owners, that they must be liable for all of the negligent acts of the contractors and their servants. And whilst it may be true that some tribunals may have held such to be the rule, other courts of equal authority have announced the opposite as the correct doctrine. That the adjudged cases are irreconcilably conflicting, seems to be true. This being the case, we feel ourselves at liberty to adopt the rule which seems to be most consonant with reason and justice. And we are the more ready to do so, when public policy interposes no obstacle.

It is supposed that the cases of *Lesher* v. *Wabash Navigation Co.*, 14 Ill. 85, *Hind* v. *Wabash Nav. Co.*, 15 Ill. 72, and the *Chicago, St. Paul and Fond du Lac R. R. Co.* v. *McCarthy*, 20 Ill. 385, are decisive of this question. In each of these cases, it was held, that the appropriation of timber from adjoining land, to the construction of the road, was by virtue and in pursuance of the authority granted by the company, and that

when exercising that statutory authority, whether by themselves or their contractors, the company must be held responsible. It was regarded an important fact that the work was being performed under the directions of their engineer. In those cases, the law authorized the company to appropriate the timber to their use, and it was held that they had delegated the authority to the contractors. Whilst in this case the law had conferred upon appellants no power, to perform the act which resulted in the injury to Ormsby, nor did they authorize or direct the contractors to perform the act. The contractors had bound themselves to perform it, and it devolved upon them to obtain the requisite permission and authority. The negligence was wholly theirs, unnecessary to the accomplishment of the work, and in no way connected with its proper performance.

Had the necessary precautions been used, to have had a suitable plate to close the opening, when the grating was laid, or failing in that, had it been properly covered, the injury need not have been sustained. The contractors did not pretend to derive any power from appellants, to place materials in the street, but on the contrary, applied to and obtained permission from the city. We are, for these reasons, of the opinion, that the true rule in cases of this character is, if the nuisance necessarily occurs, in the ordinary mode of doing the work, the occupant or owner is liable, but if it is from the negligence of the contractor, or his servants, that he should alone be responsible. That this omission to cover the opening in the area did not necessarily occur as an incident to the prosecution of the work, but from the negligence of the contractors or their workmen, we think is manifest, and hence the appellants are not liable for the damage sustained by Ormsby.

The judgment of the court below is reversed, and the cause remanded. *Judgment reversed.*