### Galatia Coal Company v. Henry Harris.

1. INDEPENDENT CONTRACTOR—*definition of.* One who contracts to do a specific piece of work, furnishing his own assistants, and executing the work either entirely in accordance with his own ideas, or in accordance with a plan previously given to him by the person for whom the work is done, without being subject to the orders of the latter in respect to the details of the work, is a contractor and not a servant, and this notwithstanding no fixed price was agreed upon in advance.

Action on the case for personal injuries. Appeal from the Circuit Court of Saline County; the Hon. ALONZO K. VICKERS, Judge, presiding. Heard in this court at the February term, 1904. Reversed, with finding of facts. Opinion filed September 9, 1904.

ABNEY & BURNETT, A. E. SOMERS and W. F. SCOTT, for appellant.

LEWIS & THOMPSON and R. D. MELTON, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court. This was a suit in case, the declaration consisting of three

counts. The first count charged that the defendant, The Galatia Coal Company, carelessly, negligently and unskill-fully stacked and caused to be stacked a large quantity of lumber and timber on certain premises possessed by it, and carelessly and negligently permitted the same to remain there without providing sufficient means to prevent it from falling over; that on June 26, 1903, while the plaintiff, Henry Harris, was lawfully on said premises and in the exercise of due care for his own safety, " by reason of the careless, negligent and unskillful manner in which said lumber and timbers were stacked," a large quantity of the same fell upon him, breaking his right leg and crushing his right ankle. The second count charged that defendant carelessly and negligently permitted certain stacks of lumber and timbers on said premises to be and remain in a dangerous condition and without sufficient means ·to prevent the same from falling, and the third that the plaintiff was a servant of the defendant and defendant failed to furnish him a reasonably safe place in which to work. The defendant filed the general issue.

The court instructed the jury to find for the defendant on the third count, which was accordingly done. The verdict of the jury on the remaining counts, was in favor of plaintiff, his damages being assessed at $700. Judgment was entered for the amount of the verdict and defendant below appeals.

At the time of the injury to appellee, appellant was the owner and operator of a coal mine and was also causing a new shaft to be sunk, preparatory to opening another mine near the one already in operation. D. M. Bissonett had the contract to sink the new shaft and had a crew of men engaged in that work. Appellant had purchased two new boilers to be used in equipping the new mine and on said day they were on the car standing on a side track some seventy feet from the new shaft. Mr. Karnes, the super-intendent of the company, engaged Bissonett to unload the boilers and the latter took his men and entered upon that work. Upon the ground near by were five or six

stacks or piles of lumber intended by appellant for use in the mine. In removing the boilers from the car Bissonett made use of some of the timbers in these stacks, and when the work was under way directed appellee to get a certain piece of timber leaning against a stack near at hand. Appellee in obedience to the order, went to the place where the timber was and raised it up, when the stack fell, some of the pieces striking his leg and inflicting the injuries for which he brought suit.

At the threshold of this investigation we are met by the question whether appellee bore such a relation to appellant as to entitle him to maintain this suit in case it should appear he was otherwise entitled to recover. The solution of this question depends largely upon the relation which Bissonett bore to appellant. Bissonett, when called as a witness for appellee, swore that he had contracted to move and was engaged in moving the boilers for the company and that the company paid him for doing so; that he gave the orders to the men; that Mr. Karnes, appellant's superintendent, made no suggestions as to the way to unload the boilers; that he had exclusive control of the work and was not subject to the orders of Mr. Karnes; that he, Bissonett, employed and paid appellee; that appellee was working for him on the day in question; that the pit-boss of appellant came up to where they were working, took hold of a jack screw and was about to turn the boiler over when Bissonett "called him down" and he went away and took no further part. Bissonett also further testified, when called by appellant, that he had no written contract for moving the boilers but that he took his men and unloaded them at the request of the superintendent and put in his bill for $45, which was paid by appellant. Appellee testified that he was working for and was paid by Bissonett at the time he was injured. Karnes, appellant's superintendent, testified that he went to Bissonett and told him he would give him the job of unloading the boilers and Bissonett agreed to do so; that he was present when Bissonett was at work but that nothing was said between them as to how to get the boilers off;

that he, Karnes, had nothing to do with directing the men and that the company paid Bissonett $45 for the work. It appears, therefore, from this evidence, which is uncontroverted, that Bissonett undertook to do the work of unloading the boilers; that he used his own men in so doing; that he received no orders or directions from appellant's officers; that he even refused to permit the proffered assistance of appellant's pit-boss; that he gave all the orders to the men; that he was paid a lump sum for the work; that appellee was in his employ and was paid by him.

In Hale v. Johnson, 80 Ill. 185, the declaration alleged that one Rowe had employed two contractors, Hale and Moss, to erect a building on certain premises which he owned; that Hale and Moss employed Johnson, the plaintiff, as a day laborer upon the building and he worked under their direction and control; that there was an unsafe wall on the premises liable to fall, which fact was known to the defendants Hale, Moss and Rowe; that Hale and Moss with the consent of Rowe, ordered plaintiff to excavate near the wall; that while he was so laboring, through the negligence of said defendants and without any negligence on his part, the wall fell upon him and crushed his arm, etc. The judgment, which was against all three of the defendants, was reversed on the ground that the employer Rowe could not be held liable, the court in the course of the opinion saying : " While a master is responsible for injuries arising from the negligence of his servant, it is the doctrine that a party who has contracted for the doing of certain work for his use and benefit, is not liable for injuries arising in the performance of such work. Scammon v. City of Chicago, 25 Ill. 424; 2 Hilliard on Torts, p. 537, sec. 11; Wharton on Negligence, sec. 181, and cases cited by these authors. Shearman and Redfield, in their work on Negligence, in discussing the subject of who are contractors or servants, in section 77 lay it down that, ' one who contracts to do a specific piece of work, furnishing his own assistants, and executing the work either entirely in accordance with his own ideas, or in accordance with a plan previously given to him by the per-

son for whom the work is done, without being subject to the orders of the latter in respect to the details of the work, is clearly a contractor and not a servant.'" To the same effect is the doctrine declared in Foster v. Wadsworth Howland Co., 168 Ill. 514.

In the case of Pioneer Construction Co. v. Hansen, 176 Ill. 100, the following doctrine is approved: "The rule of *respondeat superior* does not apply, if the party employed to do the work, in the course of which the injury occurs, is a contractor pursuing an independent employment and, by the terms of the contract, is free to exercise his own judgment and discretion as to the means and appliances that he may see proper to employ to do the work, exclusive of the control and direction in this respect of the party for whom the work is being done." Citing Deford v. State, 30 Md. 179; Smith v. Milwaukee, etc., Exchange, 91 Wis. 360; Kelley v. Mayor, 11 N. Y. 435; Reedie v. Railway Co., 4 Exch. 244; Hobbit v. Railway Co., id. 254. Many authorities upon this subject are reviewed in Chicago City Railway Co. v. Hennessey, 16 Ill. App. 153, where it is said: "The principle deducible from the authorities in this and other states seems to be that when an entire work, including materials, is committed, without any right of supervision, interference or control, to a competent and independent contractor, the party authorizing the work is exempt from liability for injury resulting from the negligence or wrongful act of the contractor, which the person letting the work had no reason to anticipate."

We are of opinion that the uncontroverted facts in this case show that Bissonett was an independent contractor in the work of removing the boilers from the car, and that if he was guilty of any negligence in connection with the work, resulting in the injury of appellee, appellant, under the rule laid down by the above authorities, could not be held liable for the same; and this rule is not affected by the fact that no fixed price was agreed upon between appellant and Bissonett, for the work to be done in advance. Whitney and Starrette Co. v. O'Rourke, 68 Ill. App. 487; Fuller v.

Citizens National Bank, 15 Fed. Rep. 875; Hexamer v. Webb, 101 N. Y. 377; Mansfield, etc., Coke Co. v. McEnery, 91 Pa. St. 185; Emmerson v. Fay, 94 Va. 60; monographic note upon "Liability for Negligence and Other Torts of Independent Contractors," 76 Am. St. Rep. 382.

The judgment of the court below will be reversed.

*Reversed.*

, Finding of facts, to be incorporated in the judgment of the court:

We find that at the time he received the injury complained of appellee was in the employ and was working under the direction of D. M. Bissonett; that said Bissonett in removing the boilers from the car, was an independent contractor, free to exercise his own judgment and discretion as to the manner of prosecuting the work and in the selection of men and appliances.