Lucy Ann Beninghoff, Administratrix, Defendant in Error, v. Gustave Futterer and The West Coast Company, Plaintiffs in Error.

## Gen. No. 17,638.

1. NEGLIGENCE—*proximate cause.* If a defective chimney on premises occupied by defendant is blown down and bricks therefrom strike an occupant of adjoining premises and injure him, the proximate cause of the accident is the negligence of defendant in failing to keep such chimney in repair or to guard against its collapse.

2. NEGLIGENCE—*liability of owner of premises.* The rule that the owner of premises is not liable for injuries resulting from the negligence of servants of an independent contractor does not relieve such owner from liability for injuries caused by his own negligence though the contractor is also negligent.

Beninghoff v. Futterer et al., 176 Ill. App. 579.

3. NEGLIGENCE—*independent contractor.* If the negligence of an owner of premises and that of an independent contractor directly concur in producing an injury, both are jointly liable.

4. NEGLIGENCE—*liability of owner of building.* If an owner allows his building to get out of repair so as to endanger adjoining owners, it becomes a nuisance, and he is liable to an adjoining owner injured when such building falls for that reason.

5. NEGLIGENCE—*neglect to keep premises in repair.* A person who has a homestead estate in premises, and resides there with his family, which he supports, is liable for personal injuries to an adjoining owner resulting from the collapse of a defective chimney on such premises caused by neglect to keep it in repair, though the fee to the premises belongs to his wife.

6. NEGLIGENCE—*when occupant of building and contractor liable for injuries caused by defects.* Where a defective chimney on a building collapsed while workmen were repairing the roof, and an adjoining owner was injured thereby, an argument that the only negligence shown was that of the workmen, and that the occupant of such building and the original contractor are not liable, does not apply where the defects were due to the neglect of such occupant and where it appears from the evidence that the workmen were servants of such contractor.

7. MASTER AND SERVANT—*when person not original contractor.* An alleged original contractor cannot be relieved from liability for negligence of certain workmen on the ground that they were servants of a subcontractor, though such original contractor merely directed the subcontractor who hired the workmen "to make a good job" of certain work, where the material was furnished and delivered at the premises by the "original contractor" and he did not deny by special plea an allegation that he was in possession and control of the premises at the time of the accident.

8. PLEADING—*when defendant must plead specially.* If defendant expects to take issue with allegations that he was the owner or in possession or control of property or instrumentalities which caused an injury, he must plead specially thereto, and in the absence of such a plea the allegations stand admitted of record.

9. PLEADING—*when leave to file special plea properly denied.* In an action for personal injuries leave to file a special plea denying that defendant was in possession or control of instrumentalities causing the injury is properly denied where such leave is asked after the trial and after the statute of limitations had run.

Error to the Circuit Court of Cook county; the HON. THOMAS G. WINDES, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1911. Affirmed. Opinion filed January 23, 1913. *Certiorari* denied by Supreme Court (making opinion final).

MANN & MILLER, for plaintiffs in error; ADAMS, BOBB & ADAMS and MARK D. GOODMAN, of counsel.

EDWARD MAYER and JAMES L. BYNUM, for defendant in error; BERNHARDT FRANK, of counsel.

MR. JUSTICE FITCH delivered the opinion of the court.

This writ of error is brought to reverse a judgment for $2,750 against plaintiffs in error for damages for wrongfully causing the death of Reuben Beninghoff. The latter and Dr. Gustave Futterer lived on adjoining lots on Fullerton Avenue, in Chicago. Between their houses was a space about six feet wide, except where a bay window projected three feet from the Beninghoff house. An outer wall supported the bay window. Under the bay window was an open space which was excavated two or three feet below the ground and floored with cement to afford an entrance to the basement of the Beninghoff house, and from this excavation, stairs led up to a cement walk running alongside the house to the street in front of the property. Nearly opposite the bay window, on the wall of the Futterer house, was a chimney which was in a bad state of repair. The title to the Futterer property was in the doctor's wife, subject, however, to an estate of homestead in the husband. The doctor's family, consisting of himself, his wife, son, mother and two servants, resided on the property continuously from 1891 until the time of the accident, in 1909, and the doctor testified: "I support the household."

On May 14, 1909, Dr. Futterer was advised by his wife that the roof leaked and needed repairs. He telephoned to a Mr. Goldberg, president of the defendant, The West Coast Company, a corporation engaged in the manufacture of roofing materials. Dr. Futterer repeated what his wife had said and requested Goldberg to "have the roof fixed up." Goldberg replied that he would attend to it. He, in turn, telephoned to

one Heavenrich, a roofing contractor residing at Gary, Indiana, and doing business under the name of the "Ready Roofing Company." Goldberg told Heavenrich "that there was a roof at 716 Fullerton avenue which was in bad condition," and asked him to remove it and put on a new roof, saying also "that material would be on the job with which to do that." Heavenrich testified that Goldberg gave him no directions as to the manner of doing the work further than "to make a good job of it;" that no price for the work was mentioned, and that he, Heavenrich, hired and paid four men, who did the work. The old roof was a gravel roof. The new one was composed of sixteen rolls of "West Coast Ready Roofing" and asphaltic cement, all of which was furnished by the West Coast Company and was in the rear of the Futterer house when Heavenrich first went there. The workmen pried off the old roof with crowbars, causing considerable noise and jarring, and threw the old material into the back yard. There is some evidence that a high wind was blowing at the time. While the workmen were tearing off the old roof, the chimney collapsed and some of the bricks and mortar fell into the space between the two buildings. A few moments later Reuben Beninghoff was found lying at the foot of the stairs above described under his own bay window, unconscious and bleeding from wounds about the head, and near him were some of the fallen bricks and mortar. He was taken to a hospital, where he died the next morning from shock and internal hemorrhage. He was seventy-four years of age, in good physical health, and had just retired from a position as a carpenter or bridge builder, at which occupation he earned eighty dollars a month.

The declaration contains three counts. The first count charges that the injury was caused by the negligence of both defendants in repairing the roof and chimney in a "reckless, improper and unsafe manner." The second count alleges that the defendant,

Futterer, ordered the roof and chimney to be repaired, and the defendant, The West Coast Company, made said repairs, with full knowledge on the part of both, of the defective condition of the chimney; and that the injury was caused by the negligent failure of both defendants "to furnish proper and suitable protection" to Beninghoff and others in close proximity to the building. The third count merely alleges that while Beninghoff was upon the premises known as 714 Fullerton Avenue, and was exercising due care, etc., and while defendants were engaged in remodeling and repairing the house at 716 Fullerton Avenue, "bricks, mortar and other materials connected with said building" fell upon him and killed him. All the counts allege that defendants were "in the possession of, had control of, and were using and operating" the premises upon which the chimney was located. The defendant Futterer, filed a plea of not guilty and a special plea denying "the ownership, control or management of said premises * * * or of any of the agencies * * * which caused the death of the said Reuben Beninghoff." The defendant, The West Coast Company, filed the general issue only. Upon the motion for a new trial, nearly two years after the accident, it asked leave to file a special plea similar to that filed by its codefendant, but the motion was denied.

In support of their contention that the judgment should be reversed, counsel for plaintiffs in error present an ingenious argument, which may be stated as follows: The only negligence shown is that of the workmen on the roof at the time of the accident; these workmen were not servants of the defendants, but were hired and paid by the Ready Roofing Company and were under its sole direction; that the latter was an independent subcontractor, in possession of the premises; therefore, neither the owner nor the original contractor is liable. If the assumptions (or deductions) of fact contained in this argument be conceded

to be correct, the conclusion stated would doubtless naturally follow. But we think the argument fails to take into consideration all the evidence. There was evidence to the effect that several months before the accident, the bricks and mortar in the chimney were loose, and it is a fair inference from all the evidence that at the time of the accident the chimney was in such a condition of decay and disintegration that it was ready to topple over or collapse at a touch or jar, or even to be blown down by a heavy wind. If it was in fact blown down (as claimed by the witness Heavenrich), then the proximate cause of the accident was the negligence of the owner or occupant in failing to keep it in a reasonable state of repair or to guard against its collapse. If it fell because it was jarred or touched by the workmen while they were tearing off the roof (and counsel admit that the evidence fairly tends to that conclusion), then the jury were justified in finding from all the evidence, that the accident was caused by the careless work of the roofers, combined with the negligence of the owner or occupant in failing to guard against the danger of the chimney falling while the men were at work on the roof.

The rule which exempts an owner of property from liability for the negligence of the servants of an independent contractor is based upon the principle that in such cases the relation of master and servant does not exist between the owner and the contractor, and therefore, the owner cannot be held liable for injuries caused solely by the negligence of the contractor or the servants of the contractor. Scammon v. City of Chicago, 25 Ill. 424; Hale v. Johnson, 80 Ill. 185. But this rule cannot be so applied as to relieve the owner from liability for injuries caused by *his own* negligence, even though the contractor may also be negligent. If an owner's own negligence and the negligence of an independent contractor directly concur in producing the injurious result, both are jointly liable. Consolidated Ice Machine Co. v. Keifer, 134 Ill. 481. If

the owner of a house suffers his building to get out of repair so as to endanger persons passing along a public street, it becomes a nuisance, and if it falls for that reason, he is liable to any one thereby injured. 1 Thompson on Negligence, 349. The same rule is applicable as between adjoining owners of land in cities. Kappes v. Appel, 14 Ill. App. 170; Schwartz v. Gilmore, 45 Ill. 455.

In the present case, the *unsafe condition* of the chimney was not due to any negligence on the part of the contractor or his workmen. Its dangerous condition was the result of the neglect of the person whose duty it was to keep the premises in repair. Dr. Futterer was the occupant of the premises. He had a homestead estate therein, resided there with his family and supported the household. That the title to the fee was in his wife's name can make no difference in this case, for it is a general rule that it is the occupant, and not the owner as such, who is responsible for injuries received in consequence of a failure to keep the premises in repair. Gridley v. City of Bloomington, 68 Ill. 47; Boyce v. Tallerman, 183 Ill. 115. The chimney was at the top of the side wall of a gravel-roofed brick house. The workmen hired by the Ready Roofing Company were roofers, not brick layers or masons. They were not employed to repair or rebuild the chimney, but to remove the old roof and lay a new one. But while they were not responsible for the defective condition of the chimney, still, in view of that condition, they were charged with the duty of exercising reasonable care in doing the work they were hired to do. That work required them to "attack" the old roof with crowbars. This, with its consequent jarring of the roof, made the work they were engaged in necessarily and inherently dangerous to anyone rightfully upon the adjoining premises who was near enough to be hit by falling bricks and mortar dislodged by their work. Under such circumstances, the rule relied on by plaintiffs in error has no application.

Sherman House Hotel Co. v. Gallagher, 129 Ill. App. 557; Scammon v. City of Chicago, *supra;* Chicago Economic Fuel-Gas Co. v. Myers, 168 Ill. 139, 146; City of Chicago v. Murdock, 212 Ill. 9.

Nor do we think that the West Coast Company, as the alleged "original contractor," can be relieved from liability, upon the ground stated, under the facts shown by the record in this case. The West Coast Company employed Heavenrich to do the work. Heavenrich testified that he frequently did this kind of work for the West Coast Company, sometimes "as an employee" and at other times "by contract." The only evidence from which it might be inferred that he laid this particular roof by contract, as distinguished from doing the work by day labor, is that he hired and paid the roofers, and that he was given no other directions as to the manner of doing the work than "to make a good job of it." On the other hand, it appears that the West Coast Company furnished and delivered at the premises all of the required material, prepared ready for laying. There is no evidence that this material was purchased or owned by the Ready Roofing Company. It was the property of the West Coast Company, and the possession of the same by the Roofing Company was the possession of the West Coast Company. Moreover, the declaration alleges that the "defendants" were in possession and control of the premises at the time of the accident, and the West Coast Company did not deny this averment by any special plea. It is contended that the rule announced in the case of Chicago Union Traction Co. v. Jerka, 227 Ill. 95, requiring matters of mere inducement in a declaration to be denied by special plea, is applicable only to railroad or street railway companies and similar corporations. There is nothing in the opinion in that case which gives any support to this claim, and it appears from the opinion that the court did not there lay down any new rule, but merely applied an established and settled principle to a personal injury

case brought against a street railway company. The Jerka case has been followed and the same rule applied in the following cases, if no others, in which the defendant was not a railroad or street railway or other like corporation. Morris v. Williams, 143 Ill. App. 144, aff'd 237 Ill. 254; Carr v. W. S. Silica Co., 153 Ill. App. 519; Johnson v. Johnson, 166 Ill. App. 422; Casey v. Grace Co., 168 Ill. App. 488. We understand the rule stated in the Jerka case, *supra,* to be one of general application, requiring a defendant to plead specially that he was not the owner or in possession or control of the property or instrumentalities which caused the injury if he expects to take issue with the plaintiff upon such allegations. On page 100 of the opinion in that case the court says: "If a plaintiff is afforded timely notice by a special plea that the want of ownership is relied upon as a defense, the plaintiff will have an opportunity of making investigation, and if he ascertains that he has sued the wrong party, he may, before the statute of limitations becomes a defense, bring his suit against the party that is, in fact, liable. We cannot imagine a case where the rule established by the decisions of this court can work any hardship on defendants." This language is peculiarly appropriate in this case, in view of the fact that after the trial, and after the statute of limitations had run, leave was asked to file such a special plea. The request was denied by the trial court and we think it was properly denied under the circumstances. There being no special plea on file on behalf of the West Coast Company, it stands admitted of record that it was in possession and control of the instrumentalities causing the injury at the time of the accident. Even if this were not true, we think the proof shows the West Coast Company was in possession, and that Heavenrich and his men were merely its employees, for whose negligence it is liable, for the reasons already stated.

We have also given due consideration to the contentions of counsel that the deceased was guilty of con-

tributory negligence, and that the damages are excessive. These are questions of fact, and the verdict of the jury as to such questions should not be disturbed unless clearly contrary to the weight of the evidence. We do not find it so. As to the alleged errors of the court in refusing instructions, we think the court properly refused those relating to the question of independent contractor, for the reasons hereinabove stated; and the instruction relating to the fact that Dr. Futterer was a stockholder in the West Coast Company was properly refused because it apparently assumes that the latter was guilty of negligence.

The judgment of the circuit court will be affirmed.

*Affirmed.*