## JOHN LINTON *vs.* JOHN SMITH & others.

The owners of a vessel are not liable for damages occasioned by the negligence of stevedores employed for a gross sum by the consignees of the charterers in unloading the cargo.

ACTION OF TORT. Trial in the court of common pleas, before *Bishop*, J., to whose rulings the defendants alleged exceptions, the substance of which appears in the opinion.

*E. D. Sohier*, for the defendants.

*E. Ripley*, for the plaintiff, cited *Hilliard* v. *Richardson*, 3 Gray, 349; *Martin* v. *Temperley*, 4 Ad. & El. N. R. 298; *Randelson* v. *Murray*, 8 Ad. & El. 109; *Burgess* v. *Gray*, 1 C. B. 578; *Stone* v. *Codman*, 15 Pick. 297; *Yates* v. *Brown*, 8 Pick. 22.

THOMAS, J. The defendants were the owners of an English vessel called the Syphax. They entered into a charter party to take a cargo from London, and deliver it alongside of the vessel to the owners in the port of Boston. The consignees of the vessel in Boston, with the consent of the master, made a contract with John and Daniel Hurley, stevedores, to discharge the cargo on to the wharf. By this contract, the stevedores were to unload the entire cargo for a certain gross sum, to find all that was necessary therefor, and to make good all damage to the cargo in unloading; the master and crew having nothing to do with it. The business of stevedores is a separate, distinct, well recognized business in Boston, which the Hurleys had followed for many years. While, under this contract, the stevedores were unloading the vessel, the plaintiff's leg was broken through the negligence of the stevedores or the men in their employ.

The question is, whether the owners of the vessel are liable for that injury ? This question, stated in another form, is, whether the relation existing between the owners of the vessel and the stevedores was that of master and servant or contractor and contractee. (The word is a bad one, but there is no substitute.)

The general rule is, that he who does the injury must respond. The well known exception is, that the master shall be responsible for the doings of the servant whom he selects and through whom, in legal contemplation, he acts.

But when the person employed is in the exercise of a distinct and independent employment, and not under the immediate supervision and control of the employer, the relation of master and servant does not exist, and the liability of a master for his servant does not attach.

Such, we think, is the case at bar. The Hurleys were exercising a distinct business, under an entire contract, for a gross sum. The relation is that of contractor and contractee.

The law upon this subject has been so recently considered by us in *Hilliard* v. *Richardson*, 3 Gray, 349, that we content ourselves with referring to two or three cases quite directly in point.

In the well known case of *Laugher* v. *Pointer*, 5 B. & C. 547, the owner of a carriage hired of a stable keeper a pair of horses to draw it for a day, the owner of the horses providing a driver, through whose negligent driving an injury was done to the horse of a third person. It was held by Lord Tenterden and Littledale, J. that the owner of the carriage was not liable, Bayley and Holroyd, JJ. dissenting.

The case of *Quarman* v. *Burnett* arose in the exchequer upon the same state of facts as in *Laugher* v. *Pointer*. The court of exchequer adopted and affirmed the view of the law before taken by Lord Tenterden and Mr. Justice Littledale, and held that the owner was not liable ; a very elaborate opinion being delivered by Mr. Baron Parke. 6 M. & W. 499.

In *Milligan* v. *Wedge*, 12 Ad. & El. 737, and 4 P. & Dav. 714, the buyer of a bullock at Smithfield Market employed a licensed drover to drive it from Smithfield. The drover employed

a boy to drive. Mischief was occasioned by the bullock through the careless driving of the boy. It was held by all the judges of the queen's bench that the owner of the bullock was not liable.

There is also a well considered case in Michigan, to the same point. *De Forrest* v. *Wright*, 2 Mich. 368. A public licensed drayman was employed to haul a quantity of salt from a warehouse and deliver it at the store of the employer, at so much a barrel. While in the act of delivering it, one of the barrels, through the carelessness of the drayman, rolled against and injured a person on the sidewalk. The court held that the employer was not liable for the injury; the drayman exercising a distinct and independent employment, and not being under the immediate control and supervision of the employer.

The case of *Randleson* v. *Murray*, 8 Ad. & El. 109, and 3 Nev. & P. 239, would seem at first to conflict with the cases before referred to. A warehouseman employed a porter to remove a barrel from his warehouse. The master porter employed his own men and tackle. Through the negligence of the men the tackle failed and the barrel fell and injured the plaintiff. The warehouseman was held liable. The report does not show whether the porter was acting upon a contract to do the job for a specific sum or on wages. The case is put, in the decision, on the relation of master and servant. See remarks of Lord Denman, C. J. and Williams, J., in *Milligan* v. *Wedge*, 12 Ad. & El. 741, 742, and 4 P. & Dav. 717.

The distinction upon which these cases and many others referred to and examined in *Hilliard* v. *Richardson* turns is, whether the relation of master and servant exists, or that of contractor and contractee. The line of separation may be sometimes indistinct and shadowy, but in the case before us it is sufficiently clear.

We are of opinion, upon the facts stated, that the owners of the vessel were not liable, and that the exceptions must be sustained.