## JOHN W. ARASMITH

### v.

## GEORGE TEMPLE.

| 11 | 39 |
| 44 | 19 |
| 11 | 39 |
| 50 | 517 |
| 11 | 39 |
| 58 | 128 |
| 11 | 39 |
| 80 | 414 |
| 11 | 39 |
| 85 | 155 |
| 11 | 39 |
| f99 ² | 5 |

1. MASTER AND SERVANT—TRESPASS.—A master is liable for a trespass committed by his servant *bona fide* as such, and in the line of his employment, although willful on the part of the servant.

2. WHEN MASTER LIABLE FOR ACTS OF SERVANT.—An employer is liable for the tortious act of his employe, if at the time the latter was his servant, and acted *bona fide* as such and in the line of his employment; but all these conditions are necessary to create a liability on his part by relation, as master.

3. SERVANT OR CONTRACTOR.—One who contracts to do a specific piece of work, without being subject to the orders of the person employing him in respect to the details of such work, is a contractor and not a servant, and the employer is not responsible for the tortious act of such contractor against a third person.

4. RATIFICATION.—Ratification consists in or is evidenced by some overt act or declaration having reference to the act ratified, and susceptible of positive proof. Mere ill will toward a person, or a disposition which might find satisfaction in the act done, however manifested, except by some act having direct reference to the particular trespass committed, does not tend to prove a ratification.

5. PUNITIVE DAMAGES.—The case is one of a class in which punitive damages may be recovered, upon a proper showing, but such damages are not recoverable against one who is innocent of the commission of the wrongful act and is to be charged only for his subsequent approval of it.

APPEAL from the Circuit Court of Henry county; the Hon. A. A. SMITH, Judge, presiding. Opinion filed May 31, 1882.

Messrs. SHEPARD & MARSTON, for appellant; that the admission of evidence of the poverty of the plaintiff was erroneous, cited C. & N. W. R. R. Co. v. Moranda, 93 Ill. 302; Chicago v. O'Brennan, 65 Ill. 343; P. Ft. W. & C. R. R. Co. v. Powers, 74 Ill. 341.

An instruction calling attention to particular points in the testimony, is erroneous: Martin v. Johnson, 89 Ill. 537; Chesney v. Meadows, 90 Ill. 430; Aurora v. Hillman, 90 Ill. 61; Phillips v. Roberts, 90 Ill. 492; Pro. Life Ins. Co. v. Dill, 91 Ill. 174; Hatch v. Marsh, 71 Ill. 371; Homes v. Hale, 71 Ill. 552; Raff v. Jarrett, 94 Ill. 476; Neuerberg v. Gaulter, 4 Bradwell, 348; Am. Ins. Co. v. Crawford, 89 Ill. 62.

It was the province of the jury to determine whether the co-defendant was in the employ of appellant, or whether he was acting for himself: Hubner v. Feige, 90 Ill. 208; Van Duzer v. Allen, 90 Ill. 499; Guerdon v. Corbett, 87 Ill. 272; Pemberton v. Williams, 87 Ill. 15; Poleman v. Johnson, 84 Ill. 269.

Appellant is not liable unless he authorized the act, or afterward ratified it: Blalock v. Randall, 76 Ill. 224; Tuller v. Voght, 13 Ill. 285; Rich v. Jackson, 18 Barb. 357; Thames S. S. Co. v. Housatonic R. R. Co. 24 Conn. 40.

It is error to give an instruction upon evidence not in the case: Drohn v. Brewer, 77 Ill. 280; Callahan v. Myers, 89 Ill. 566; C. M. & St. P. R. R. Co. v. Hall, 90 Ill. 42; C. W. D. Ry. Co. v. Mills, 91 Ill. 39; Ewing v. Runkle, 20 Ill. 464; Fame Ins. Co. v. Morse, 4 Bradwell, 485; Freeport v. Isbell, 83 Ill. 440; Martin v. Johnson, 89 Ill. 537; Parker v. Fisher, 39 Ill. 164; Miller v. Balthesser, 78 Ill. 302; Holiday v. Burgess, 34 Ill. 193.

Where the person doing the injury is a contractor and not a servant, he alone is liable: DeForest v. Wright, 2 Mich. 368; Linton v. Smith, 8 Gray, 147; Milligan v. Wedge, 12 A. & E. 737; McCarthy v. Parish of Portland, 71 Me. 318; Hilliard v. Richardson, 3 Gray, 349; Little Miami R. R. Co. v. Wetmore, 19 Ohio St. 110; Moore v. Sanborne, 2 Mich. 579; Shearman & Redfield on Negligence, 376; Murray v. Currie, 6 C. P. 24; Wood v. Cobb, 13 Allen, 58; Eaton v. E. & N. A. Ry. Co., 59 Me. 520.

Even if the relation of master and servant existed, the act done was not in the line of the servant's duty, and the master is not responsible therefor: Thames S. S. Co. v. Housatonic R. R. Co. 24 Conn. 40; Oxford v. Peter, 28 Ill. 434; Aldrich v. B. & W. R. R. Co. 100 Mass. 31.

Arasmith v. Temple.

Mr. C. W. McGOVERN and Mr. CHARLES DUNHAM, for appellee; that the master is liable for the acts of his servant, though not done in the line of his employment, if he afterward adopted and ratified the act, cited T. W. & W. R. R. Co. v. Harmon, 47 Ill. 298; C. B. & Q. R. R. Co. v. Dickson, 63 Ill. 151; C. B. & Q. R. R. Co. v. Parks, 18 Ill. 460; C. B. & Q. R. R. Co. v. Sykes, 96 Ill. 162; Levi v. Brooks, 121 Mass. 501; Hawes v. Knowles, 114 Mass. 518; Barden v. Fitch, 109 Mass. 154; Holden v. Fitchburg R. R. Co. 129 Mass. 268; Howe v. Newmarch, 12 Allen, 49; Bass v. C. & N. W. R. R. Co. 42 Wis. 654.

Punitive damages are recoverable in such cases: Wood on Master and Servant, 666; C. & N. W. R. R. Co. v. Williams, 55 Ill. 185; Bass v. C. & N. W. R. R. Co. 42 Wis. 654.

PLEASANTS, P. J. This was an action of trespass, brought by appellee against one Thomas Jones and appellant.

Jones was a trainer of race horses and had followed that business exclusively for many years. At St. Louis, in June 1880, he met Temple—a lad of small stature, in the nineteenth year of his age, with some experience as a galloper—and took him into his employ. Together they went to Chicago, and in September afterward to Burlington, Iowa, to attend the county fair. Arasmith was a farmer in Henry county, who had also for some years been raising a few thorough-bred colts to sell or to run as he thought likely to be most profitable, but was not a trainer nor did he ever undertake to train them. He, too, attended the fair mentioned, and meeting Jones—who had previously lived on his place, and then had a mare and colt in pasture, and a stallion in stable there—proposed to him to train and fit his two young horses for the season of 1881, for a share of their earnings; and also then spoke to Temple about riding them. Jones neither accepted nor declined the proposition, but said he was coming up that fall.

On the 27th of September he went to Arasmith's place, taking Temple with him, and the weather being favorable, immediately proceeded to break and exercise the colts, under no express agreement as to work or compensation, but with an un-

derstanding that he was to train and fit them for races of the next season on terms to be arranged. He was put in charge of them and of the racing stable, so called, in which they and his stallion were kept, and exercised sole control of the boy in all things pertaining to the care and treatment of them. Appellant gave no orders at any time, to either, on that subject.

On the 8th of October, having learned that Jones would not pay him as was promised, Temple insisted on some definite arrangement, and was then hired by Arasmith to go on as before under Jones' direction; which he accordingly did until the 20th.

On that day, for his refusal to mount in the stable as ordered, he was cursed by Jones as a coward; but when the colt was brought out he mounted, galloped and returned it as usual. Later in the same afternoon, in the potato patch, upon a provocation not necessary to be stated, Jones applied to him some opprobrious epithets, to which the boy answered defiantly; and near supper time, at the stable, again roughly reproved him for it. After shutting all the stable doors except the one to the feed room, which he says was left open because Arasmith's son had not done feeding his filly, and getting up his mare for a ride over to Cable, in Mercer county, on his own business, he went in to supper. Some one remarked Temple's absence. As Jones went after supper to where his mare was hitched young Arasmith told him that Temple was in the feed room, and also that he had said he would have shot him (Jones) in the potato patch that afternoon if he had had a pistol. The stalls and feed room had not previously been locked at night, but Jones states that on receiving this information he at once thought of the poisoning of a horse in his charge at Chicago, in connection with which he had some suspicions of Temple, and fearing that he might dose the stallion, whose stall was next to the feed room and exposed by the removal of a board from the partition between them, went to get him away; and upon his failure to go out immediately on being ordered, forcibly put him out—which constituted the trespass complained of.

Arasmith had gone to Mercer county early in the day, and

Arasmith v. Temple.

not returning until near midnight knew nothing of these quarrels or of the trespass in question until the following morning. He was nevertheless joined as defendant with Jones, and is sought to be charged by relation, as his master. It was also claimed that he ratified or adopted the act of Jones, and to prove it appellee was permitted, against objection, to introduce evidence that appellant by word and deed, after full information of the facts, manifested a disposition that was unfriendly to him and friendly to Jones. These consisted in his refusal to settle with appellee for his labor when requested the day before the latter went away, and to deliver to him his overcoat when he called for it, on the ground that Jones claimed it as having paid for it, some mean and unjust deduction from his wages when he did settle, and a brutal remark addressed to him upon the manner in which he walked—a consequence of the injury he had received at the hands of Jones—all of which were adapted to awaken symyathy for the one and indignation against the other. He was also permitted to show his poverty, amounting to destitution, when he left appellant's place some ten days after the injury and as soon as he was able to leave his bed, and that means were contributed by charitable persons in the neighborhood to supply him with needed clothing.

A verdict of guilty was returned and damages assessed against both defendants; and the court, after overruling a motion by appellant to set it aside, entered a judgment thereon; from which the defendant Arasmith took this appeal, and upon the record brought here assigns for error, among others, the admission of improper evidence and the giving of improper instructions on behalf of the plaintiff, appellee.

That a master is liable for a trespass committed by his servant *bona fide* as such and in the line of his employment, although willful on the part of the servant, has been often declared by the Supreme Court of this State. Johnson v. Barber, 5 Gilm. 430; C. B. & Q. R. R. Co. v. Parks, 18 Ill. 460; C. St. P. & F. R. R. Co. v. McCarthy, 20 Ill. 385; T. W. & W. R. R. Co. v. Harmon, 47 Id. 298; C. & N. W. R. R. Co. v. Williams, 55 Id. 185; C. B. & Q. R. R. Co. v. Dickson, 63

Id. 151; N. W. R. R. Co. v. Hack, 66 Id. 238; Noble v. Cunningham, 74 Id. 51; C. B. & Q. R. R. Co. v. Bryan, 90 Id. 126; Same v. Sykes, 96 Id. 162. So is the current of authority in other states of the Union and in England. Phila. & Reading R. R. Co. v. Derby, 14 How. (U. S.) 468; Peck v. N. Y. Cent. R. R. Co. 6 T. & C. 436; Weed v. Panama R. R. Co. 17 N. Y. 362; Cosgrove v. Ogden, 49 Id. 255 (10 Am. Rep. 361); Shea v. Sixth Av. R. R. Co. 62 Id. 180; Howe v. Newmarch, 12 Allen (Mass.), 49; Barden v. Felch, 109 Mass. 154; Hawes v. Knowles, 114 Id. 518; Duggins v. Watson, 15 Ark. 118; Limpus v. The London Gen'l Omnibus Co. I. H. & C. (Exch.) 528; Seymore v. Greenwood, 6 H. & N. (Exch.) 359; affirmed in 7 Id. 356, and many others, cited in Wood's Law of Master and Servant, pp. 567 (Sec. 295); 569, note 1, 575 (Sec. 299); 585, Sec. 307, and 593, note 1.

This liability is generally based upon the principle of agency, *qui facit per alium facit per se.* Quarman v. Burnett, 6 M. & W. (side p.) 509; Bartonshill Coal Co. v. Reid, 3 Macqueen, 283; Scammon v. City of Chicago, 25 Ill. 424; Wood's M. & S., Sec. 277, *et seq.* (pp. 534–7.) [The act of the servant within the scope of his authority, with all its characteristics—whether of willfulness, negligence or unskilfulness—is deemed to be the act of the master. And every thing done by the servant, *bona fide* as such and in the line of his employment, is within the scope of his authority.] The master's direction to do it is implied or conclusively presumed from the relation existing between them. Ibid, Sec. 279, pp. 536–7. For a servant is defined to be one who is for a limited time lawfully subject to the control of another in a particular trade, business, or occupation. Ibid, Secs. 1, 314 (p. 610), 317 (p. 630), and cases cited in notes. And this control extends not only to every such act, but also to the time and means and manner of doing it. Brakett v. Lubke, 4 Allen (Mass.), 38; Wood v. Cobb, 13 Id. 58; Hale v. Johnson, 80 Ill. 185; Shear'n and Red'f on Negligence, Sec. 73; Wood's M. and S., pp. 537 (Sec. 281) 618, 619, 620, and notes 627–9. Having set the servant to work about his own business, with the right to direct and control him as to the manner of doing

Arasmith v. Temple.

it, he ought to answer to others for whatever injury they suf-
fer by reason of what he so does, or of the manner in which
he does it; and equally so whether it be willful or only careless
or unskillful.   Kelly v. City of New York, 11 N. Y. 432;
Blake v. Ferris; 5 Id. and cases *supra*.

If, then, at the time of his putting appellee out of the feed
room, Jones was the servant of appellant, and acted therein
*bona fide* for him as such servant, and in the line of his em-
ployment, appellant would be responsible for it although the
act may have been malicious and in the manner of doing it
unlawful and in fact against his will.

But all these three conditions are necessary to make him
liable, upon implied authority, for the tortious act of another.
Wood's M. & S., pp. 535–7 (secs. 279–281), p. 562 (sec. 288),
p. 576 (sec. 300), and p. 580 (sec. 304), and cases cited in
notes.   His plea of not guilty put them all in issue, and the
burden of proof as to each was upon the plaintiff.

It is not denied that the act of Jones was tortious by rea-
son of the manner in which it was done, nor that he was in
the employment of appellant when he committed it; and we
are satisfied, further, that it was in the line of such employ-
ment.   Having charge of the stable and of the horses in it
he was bound to use ordinary care for their safety; and the
closing of it, and by consequence the exclusion of all persons
from it, during the night, was fairly incident to the discharge
of that duty.   If it had been done with that view, and in a
proper manner, by force if necessary, he would have been
justified by the employment.   It was the use of unnecessary
force that made it tortious.

It remained then for the plaintiff to show, by a preponder-
ance of evidence, the other two conditions of defendant Aras-
mith's liability, viz.: that Jones was his servant, and that he
committed the act *bona fide* in furtherance of his business.

In reference to the first, there was no evidence tending to
show what he was to do under his employment, or that he
was to do anything, except to train and fit the two colts for
the next season's races.

In what character or capacity he was to do that does not

positively appear. There can be no presumption, from the employment alone, that it was in that of a servant, since it might as well be done in that of a contractor. Certainly none that is conclusive. Hence, in order to determine this question recourse must be had to other facts and circumstances bearing upon it, if any such are shown; and to entitle the plaintiff to recover, as against Arasmith, these must preponderate in favor of the conclusion and the jury must find upon consideration of them all that he was employed as a servant and not as a contractor. Yet the first instruction given on behalf of the plaintiff was as follows:

1.  "That if you believe from the evidence that the defendant Jones was in the employ of the defendant Arasmith, and that in consequence of such employment it was his duty, or that he had a right to · require the plaintiff, George Temple, to go out of the feed room in the stable, at the time of the injury of the plaintiff (if he was injured), if he were required, yet you are instructed that in such case it was the duty of the defendant Jones to first ask him to go out, and if he refused to comply with such request, then that he, the said defendant Jones, had a right to put his hands on the plaintiff Temple gently, for the purpose of removing him; but not to use any more force than was necessary to put him out.

"And if you believe from the evidence that he did use more force than necessary, and that he struck and kicked the plaintiff unnecessarily, and not in the necessary defense of his own person, then you will find the defendant Jones guilty as charged in the declaration. And if you believe from the evidence that said defendant Jones was, in requiring the plaintiff to go out of said feed room, engaged within the line of his employment by the defendant Arasmith, although you may further believe from the evidence that the defendant Arasmith had not told him to remove the plaintiff from said feed room, and even that the defendant Arasmith does not and never did approve of the manner of his removal, or of the kicking and striking of the plaintiff by the defendant Jones, if he did kick or strike him, yet you will find the defendant Arasmith guilty, if you find the defendant Jones guilty under the first part of this instruction."

Arasmith v. Temple.

This would authorize them to assume that he was a servant or to presume it from the mere fact that he " was in his employment." We think it absolutely erroneous in either view. But if there could be any presumption that he was a servant from the mere fact of his employment it was still erroneous in that aspect if there was any evidence beyond that fact tending to show that the employment was not such as to create the relation of master and servant. And we think there was. As has been seen from the authorities cited, a servant is subject to the control of the master in respect to the time, manner, means, instruments and other details of his work, as such, in the line of his employment. A contractor, on the other hand, is defined to be one who follows a regular independent " employment, in the course of which he offers his services to the public to accept orders and execute commissions for all who may employ him in a certain line of duty, using his own means for the purpose and being accountable for final performance." Cooley on Torts, p. 519. " One who contracts to do a specific piece of work, furnishing his own assistants, and executing the work either entirely in accordance with his own ideas or in accordance with a plan previously given to him by the person for whom the work is done, without being subject to the orders of the latter in respect to the details of the work, is clearly a contractor and not a servant." Shearman & Redfield on Negligence, Sec. 77, and quoted with approval by our own Supreme Court in Hale v. Johnson, 80 Ill. 185.

" The rule is that when the employe is exercising a distinct and independent employment and is not under the immediate control, direction or supervision of the employer, the latter is not responsible for the negligence or carelessness of the employe." Wood's Master and Servant, taken from the opinion of the court in Linton v. Smith, 8 Gray, 147. Other authoritative statements of the tests by which to distinguish a contractor from a servant are: " Whether the service is rendered by one who in the pursuit of an independent business undertakes to do a specific job for another, without submitting to his control in all the petty details of the work," and " whether

the party renders the service in the course of an independent occupation, representing the will of the employer only as to the results of the work and not as to the means by which it is to be accomplished." Shearman & Redfield on Negligence, Sec. 76, taken from the opinion in DeForrest v. Wright, 2 Mich. 368. "The employment of one who carries on an independent business, and in doing his work does not act under the direction and control of his employer but determines for himself in what manner it shall be carried on, does not create the relation of master and servant." McCarthy v. Second Parish of Portland, 71 Maine, 318 (36 Am. Rep. 320).

As illustrating the meaning and application of these general and abstract statements a few of the cases in which the employe, through whose carelessness or that of some one under him the injury complained of was done, was held to be not a servant but a contractor, and the employer therefore not liable, are here referred to. A stable keeper, of whom the owner of a carriage hired the horses to draw it, and who provided also the driver: Laugher v. Pointer, 5 B. & C. 547, and Quarman v. Burnett, 6 M & W. 499; a licensed drover, employed by a butcher to drive a bullock in the City of London, who provided his own assistant: Milligan v. Wedge, 12 Ad. &. El. 737; one employed to complete the sinking of a shaft, for which the employer was to furnish the steam power and pay the engineer, who was however to be under the control of the employe: Rourke v. White Moss Colliery Co. 1. C. P. Div. 556; a master stevedore, employed by ship owner to unload the vessel, who used in the work a steam winch (which was the means of the injury) furnished by the vessel and employed among others one of its crew: Murray v. Currie, L. R. 6 C. P. 24; another case of a stevedore and like employment: Linton v. Smith, 8 Gray, 147; one employed by a town to remove certain stone to widen a highway, taking the same in part payment, and by a manufacturing company to construct a dam of it for a certain sum per day for himself and each of his men—the company to furnish the powder for blasting and to superintend the construction of the dam, but not to have any control over the blasting—was held not a servant of the company in respect

Arasmith v. Temple.

to the blasting: Corbin v. American Mills Co. 27 Conn. 274; a carpenter employed by land owner to alter and repair a building on it and to furnish the material for a specified price: Hilliard v. Richardson, 3 Gray, 349; contractors employed to erect building: Scammon v. City of Chicago, 25 Ill. 424; or to excavate for foundation: Hale v. Johnson, 80 Id. 185; one employed to hoist a chime of bells, furnishing the labor and apparatus for $50, by another who had contracted to cast and hang them: Forsyte v. Hooper, 11 Allen (Mass.), 419; a truckman employed by fish dealers to deliver their parcels to customers every Friday, at one dollar for the day, using his own wagons and assistants: Wood v. Cobb, 13 Id. 58; a drayman employed to haul salt from a warehouse to the store of the employer: DeForrest v. Wright, 2 Mich. 368; one employed to cut and haul all the logs on certain land of the employer and deliver them at a place named: Moore v. Sanborne, Ibid, 519; a slater employed to repair the roof of a church: McCarthy v. Second Parish of Portland, 71 Maine, 318.

We have seen that the reason for holding the master liable for the act of his servant, committed as such and in the line of his employment, is that it is conclusively presumed to have been done by his authority—" under and in conformity to his directions," as was said in Scammon v. City of Chicago, *supra*—and that this presumption is indulged because by virtue of his relation as master he has the control as to such an act and may lawfully determine, as between himself and the servant, whether it shall or shall not be done, and if done, in what manner. This right of control is what makes him a master.

We are therefore not unprepared to find that the reason why the employers in the series of cases last above referred to were held not liable for the injuries caused by the wrongful acts of the employes or of those working under them, was that as to the acts in question they had not such right of control. The want of it was what made them contractors and not masters. They looked to the result, and left to the judgment and responsibility of the contractor the means and manner of its accomplishment.

But how is it ascertained in such cases that the employer has not this right of control? The contract in terms makes no provision in relation to it. Of necessity therefore, resort must be had to circumstantial evidence; the parties, the work, and such other facts shown as would naturally lead us, in the light of our general knowledge of men and business, to infer their intention. For example, if the contract disclosed nothing more of what was to be done than that it was to work on a farm, the natural inference from the single circumstance that nothing more was specified, in the light of common knowledge of the variety of work to be done on a farm, would be that the employe was to be directed from time to time what to do and how to do it. So, if it were to work at plowing, or ditching, or fencing on a certain farm; for there would still be nothing definite in respect to the time, place, amount or style of the work, and as to these the party for whom it was to be done would naturally be expected to direct.

If, however, it were to plow a certain field for the next corn planting, to build a certain described fence, to dig and complete a well as specified, or the like, it would present the case of a contract for a "specific job," where the employer might be interested only in the "result" and quite indifferent to the method of its accomplishment.

Here it might be difficult to form a satisfactory conclusion upon the point in question from this circumstance alone. But the further fact that the job was such as to require for its accomplishment some special knowledge and skill, falling within "a regular independent employment" or "distinct calling" which the employe followed as a business, would raise some probability that it was intended to leave to his judgment, to be exercised on his own responsibility, the means, the manner of using them, and all the details of the work. This probability would be increased by the additional fact that he was to be paid for it a "gross sum;" and further, "if he used his own tools and assistants;" and still further, if the employer neither had nor pretended to have the special knowledge and skill required; and might become a clear belief, if it also appeared that during the progress of the work

Arasmith v. Temple.

he did not in fact, though present, give any directions in regard to them.   These and other like circumstances appearing in different cases have come to be recognized as *indicia* of the character of a contractor, and have been gathered up by courts and text writers into definitions to distinguish it from that of a servant.   No one perhaps is essential to it or conclusive of it, but they all tend to establish the one fact which is decisive, namely, that as to the act in question the employe was not subject to the control and direction of the employer.   The series of cases above cited present all that have been mentioned and perhaps more, but not all that might appear, of which an example is suggested by the case at bar, where the compensation is contingent upon securing a result which is necessarily uncertain but largely depends upon the care and skill of the employe to be used upon a job in the line of his special business.

In this case we find evidence tending to prove that the parties were previously acquainted with each other and his business; that the employment was for a specific job, to fit and train two certain horses for a certain purpose, nothing being said about anything else and the employe being partially disqualified for ordinary farm work by the loss of an arm; that this job required for its accomplishment special knowledge and skill; that the employer did not possess nor pretend to possess them; that the employe did, making that kind of work his business, in which he held himself out as ready to engage for any who might employ him; that he brought to the work his own assistant, with whom under his employment and in his pay he entered upon it; that the only compensation suggested was a proportion of the earnings of the horses he was to train and fit; and that the employer, having ample opportunity, never gave him a direction in reference to his work, or his assistant.   Whether these facts or any and which of them were proved by it, and how much they weighed, and whether more or less than those, if any, which tended to show that Jones was a servant, was for the jury alone to determine; and unless they found, upon consideration of this evidence in connection with all the other in the case, that he was the servant of appellant,

subject to his direction in the use and treatment of his assistant, and in all the details of the work he was employed to do, they should have returned a verdict for appellant, notwithstanding they may have been satisfied from the evidence that . Jones was in his employment and committed the trespass in the line of it. ·But the instruction quoted, withdrew° from them the consideration of the evidence above referred to, and practically the determination of this vital question, by assuming that if " in his employment," which was not denied, he was his servant.

The same fault vitiates the five next following:

They alike assume the relation of master and servant upon the hypothesis of employment alone and unqualified, use the terms " master " and " employer " synonymously and ignore, throughout, the defense we have been considering. .

But further, where an act is committed by a servant wholly for himself, that purpose is a negation of agency for or authority from another. ⟨Hence, even if Jones had been a servant and the act in question had been in the line of his employment, yet unless he committed it as servant, that is, *bona fide* in furtherance of his master's business and not on his own account merely, appellant would not be liable for it.⟩ Limpus v. London Gen'l Omnibus Co. 1 H. & C. (Exch.) 528; Seymour v. Greenwood, 6 H. & N. (Exch.) 359, aff'd 7 Id. 356; Cosgrove v. Ogden, 49 N. Y. 255; Howe v. Newmarch, 12 Allen, 49; Hewitt v. Swift, 3 Id. 423; Ramsden v. Bost. & Alb. R. R. Co., 104 Mass. 117; Garretzen v. Duenckel, 50 Mo. 104, 11 Am. Rep. 405; T. W. & W. R. R. Co. v. Harmon, 47 Ill. 307–8; C. B. & Q. R. R. Co. v. Sykes, 96 Ill. 175; Wood's Master and Servant, pp. 535–7, 544, 556, 558, 562, 567, (sec. 294), 570, 571, 576, 580, 585 and 595.

Was it done, then, with any reference whatever to appellant's business or interests, or was it merely to protect his own property or gratify his own malice?

, This also was a question for the jury alone. From its nature no witness but Jones himself could speak positively, and he swears it was to protect his own property. According to his testimony, the supposed poisoning at Chicago, the sus-

Arasmith v. Temple.

picion of appellee's connection with it, his repeated quarrels with the witness shortly before the act was committed, the report to witness, immediately preceding it, of his threat and temper, and the exposure of the stallion, were the considerations which moved him.

It is suggested that he was discredited generally by his relation to the case and his manner on the stand, and on this point in particular by the fact, as it is said, that he then had no interest of value in the stallion, by reason of appellant's lien for its keeping, and further because on his preliminary examination upon a criminal complaint for this same trespass he admitted under oath that he acted through fear lest appellee would burn the stable or poison the horses.

There is evidence, however, that he thought he had an interest—a fact which would supply the required motive as fully as an actual interest. And the alleged admission, about which there is some conflict, was not competent evidence of the fact admitted, as against appellant, but only to impeach the witness, and his impeachment could operate no further, as to this issue, than to take out of the case the only positive evidence there was in relation to it. It is argued, indeed, that appellant himself, on that examination, "when he attempted to justify or palliate his conduct," testified in effect that Jones was acting in his, appellant's, behalf "by swearing that he had charge of the race stable." "What difference," it is asked, "could it make whether he had charge of the stable or not unless the act was done in behalf of appellant?" We have no difficulty in understanding how the fact that Jones was in charge of the stable, no matter for whom, might of itself be regarded as some palliation of his violent expulsion from it of one who declined to leave on his order, but do not perceive how the act, if otherwise unlawful, would be justified or palliated by the circumstance that it was committed on behalf of another. Appellant testified on the trial of this case also, in substance, that Jones had charge of the stable, but we do not suppose he intended thereby or would have been allowed to express his opinion—for it could have been no more—as to Jones' motive. Had he been pres-

ent during the whole transaction he could not have known it
as a fact, and being absent it was also impossible for him
personally to know any other from which to derive it as an
opinion.  We say then that the only positive testimony on
this point was that of Jones, which was directly against the
plaintiff.  But there were divers circumstances tending to
corroborate him and to show that he had no reason to appre-
hend danger to the property of appellant, as that appellee
had never before been ordered out of the feed room; that he
had no occasion for ill will toward appellant, and no access
from the feed room to the stalls of his horses; it did not ap-
pear that he smoked tobacco or carried matches for any pur-
pose; and he could have burned the stable, if such had been
his purpose, as well from without as from within, and perhaps
with less risk of detection or liability to suspicion.  On the
other hand there was evidence tending to show that he had
very considerable and recent occasion for ill will toward
Jones, and that he had access to the stallion from the feed
room but not from without.  These circumstances would seem
to forbid the rejection of Jones' testimony as uncorrobo-
rated, and were certainly proper to be considered by the jury
in determining whether the trespass was committed *bona fide*
in furtherance of appellant's business; and unless upon such
consideration they found that it was so committed their ver-
dict should have been for that reason in his favor.  We are
of opinion that some of the instructions given for the plaint-
iff were faulty in respect to this issue also, in that they as-
sume that the act was so committed or held that it was enough
to charge appellant if it was in the line of Jones' employ-
ment.

Thus, the whole of the hypothesis in the first, above quoted,
so far as it relates to this issue, is that in committing the act
the employe was "engaged within the line of his employ-
ment;" and in the fifth that it was committed by him "while
in the employment" of appellant and "while engaged in the
general line of his duty in such employment."

Now whether it was or was not in the line of his employ-
ment must be determined from the act itself as it appears to

the sense of an observer, irrespective of the motive or object of its commission, but whether it was or was not done *bona fide* in furtherance of the employer's business must depend altogether upon such motive or object. It might, therefore, have been in the line of his employment and yet not in furtherance of the employer's business, or *vice versa*, or both. To make the employer responsible for it, as master, it must have been both.

These instructions are erroneous in so holding him if it was in the line of the employment only. We think, too, that the second might have misled the jury by its want of clearness on this point; and that the more accurate statement of the law in others did not cure the error here indicated.

The seventh declares that if Temple, at the time of the injury, "had concluded his employment for that day, for the defendant Arasmith, and was not then in fact and actually at work" for him, then at that particular time he was not a fellow servant with Jones. While not disposed to criticise this proposition we think it proper, with reference to another trial, to suggest that the second clause of the condition as stated is necessarily implied in the first and therefore superfluous; but the jury might understand from the fact of its expression that it was intended to add something and it could have that effect only as a statement of the same thing in another form for greater clearness or of another fact which would be sufficient proof of it. Yet if Temple was waiting for the horses to eat, with the intention of doing after that some further work about them or the stable, or was still holding himself ready for further order from Jones in reference to them, he had not "concluded his employment for the day" although "not then in fact and actually at work."

The admission of the evidence touching the settlement with appellee, the refusal to deliver his overcoat and the remark about his manner of walking—occurring at different times, but all a fortnight or more after his injury—is defended on the ground that it showed in appellant an unfriendly disposition —in sympathy with the injurious act—and so tended to prove a ratification or adoption of it. No authority is cited,

and the reason offered appears to us unsound. Ratification consists in or is evidenced by some overt act or declaration having reference to the act ratified, and susceptible of positive proof. A disposition which might find satisfaction in it, but manifested only by acts or declarations not particularly referring to it, can not legally or logically tend to prove the actual commission or use of another having such reference. In other words, ill will on the part of appellant toward appellee, however manifested, except by some act or expression having direct reference to the particular trespass committed upon him by Jones, does not tend to prove a ratification or adoption by him of that trespass. This evidence then was improperly admitted.

The case belongs to a class in which punitory damages may be recovered: C. & N. W. R'y Co. v. Williams, 55 Ill. 185; and in which for that reason the propriety of proving the poverty of the plaintiff seems to be recognized. Grable v. Margrave, 3 Scam. 372; City of Chicago v. O'Brennan, 65 Ill. 163-4. We are, therefore, not prepared to hold that the admission of the evidence on that subject was error. But it appears to be the doctrine in this State that such damages are not recoverable against a party who "is innocent of the commission of a wrongful act, and is to be charged only for his subsequent approval or sanction of it:" Grund v. Van Vleck, 69 Ill. 481, and, therefore, its admission or consideration by the jury will be proper only in case they find Arasmith an original tortfeasor by relation, as master, to Jones.

For the errors indicated the judgment of the circuit court is reversed and the cause remanded.

Reversed and remanded.