The second codicil of the will was attested by but two witnesses. Section 1380, Compiled Laws, New Mexico, requires that a will shall be attested by three or more witnesses. To constitute a valid attestation of the codicil would require no less number. Jar. Wills, sec. 93.

ATTESTATION of codicil.

The court below committed no error in setting aside the action of the probate court approving said codicil.

A number of errors have been assigned by the appellants besides those already noticed, but they all depend more or less upon the questions already noticed in this opinion. We do not think it necessary to enter into a discussion of them. The case was properly decided below upon the merits. We see no substantial errors in the record, and the judgment will be affirmed.

LONG, C. J., and LEE, J., concur.

---

[No. 385.    February 12, 1890.]

DAVID ABRAHAMS, APPELLEE, v. THE CALIFORNIA POWDER WORKS, APPELLANT.

TRESPASS ON CASE—NEGLIGENCE—DAMAGES—RESPONDEAT SUPERIOR.—
Where gunpowder is consigned to be sold on commission, the relation between consignor and consignee is not that of master and servant, but simply of consignor and factor or consignee for the purpose of selling the goods; and where such factor or consignee has the exclusive management and control of the storage of the goods as such, of which the consignor has no knowledge, and with which has nothing to do, the doctrine of respondeat superior does not apply; and the consignor is not liable, in an action of trespass on the case, for damages, resulting from an explosion of the gun powder so consigned and stored.

APPEAL, from a judgment in favor of plaintiff, from the Third Judicial District Court, Grant County. Judgment reversed, and cause remanded for new trial.

The facts are stated in the opinion of the court.

CATRON, KNAEBEL & CLANCY for appellants.

If it had been proved that both defendants below had joint ownership or possession of the magazine, under such circumstances as to make them liable for the consequences of the explosion, that liability would have been a joint liability, and not a joint and several liability, as in ordinary cases of trespass by two or more wrongdoers, and the action might have been abated by plea, had it been brought against one of the parties only. On the same principle a verdict in this case in favor of one of the defendants made necessary a like verdict in favor of the other. Dicey on Parties, p. 439.

It is now well settled that the doctrine of respondeat superior has no application in cases of this kind, the bailee in possession of the property being held exclusively responsible for its keeping and managment, without recourse by injured third parties to the employer or bailor. 23 Wall. (U. S.) 329, 330; 16 Id. 576; 5 N. Y. 48, 60, et seq.; 10 Id. 216.

The court erred in its instructions to the jury, given at the instance of plaintiff. Hug v. Licht, 80 N. Y. 579, 581, 585. See, also, 1 John. 78; 6 Hill. 292; 80 N. Y. 579.

It was error to admit in evidence the pretended municipal ordinance. 30 Iowa, 291; 19 Mo. 551, 555; 42 Id. 210, 214; 61 Cal. 509; 22 N. Y. 191.

GIDEON D. BANTZ and A. H. HARLLEE for appellee.

The storing of large quantities of powder in the midst of a thickly populated community, where injury to persons and property will surely result from an explosion, is wrongful, and the owner of such powder is bound at his peril to keep it secure. Addison on Torts, 358, margin; Fletcher v. Rylands, L. R. 1 Exch. 265; 3 Eng. & Ir. App. 330.

The negligence and wrong consist in keeping the explosive in the locality, and the right to recover damages arises as soon as the injury is done. Until then it is a nuisance of which the public may compel abatement. Lord HOLT in 12 Mod. 343. See, also, Hug v. Licht, 80 N. Y. 581; Addison on Torts, 297.

LEE, J.—This is an action of trespass on the case, by the plaintiff, David Abrahams against the defendant the California Powder Works, and also the Safety Nitro-Powder Company, corporations organized under the laws of California, to recover damages for an alleged injury to a brick hotel building situated in the town of Silver City, in the county of Grant, from an explosion of a certain lot of powder stored in a powder house in said town of Silver City, which powder house, it is alleged, was erected, kept, and maintained, and which powder was stored in said house, by the defendants. The defendants plead not guilty. There was a trial by jury, verdict for $300 against defendant the California Powder Works, and, by direction of the court, not guilty as to the Safety Nitro-Powder Company. The California Powder Works brings the case to this court by an appeal.

The evidence on the part of the plaintiff tended to show that there were eighty kegs of powder in the house, at the time of the explosion, belonging to de-

fendant the California Powder Works, which was consigned to Neff & Stevens for sale on commission. Evidence was introduced on the part of the defendant tending to show that the powder in question, the eighty kegs, was not a consignment, but an absolute sale, to Neff & Stevens. We will consider the case as if the position of the plaintiff was the correct one, in this respect.

As to the ownership and control of the powder house, the evidence on the part of the plaintiff is indefinite and uncertain. The witness Neff testifies that Higbee and Cohn told him it belonged to the defendant the California Powder Works, but says he does not know of any connection Cohn had with the defendant company; that his understanding is that Higbee had been an agent of the company, and that he built the house. The nature and character of the agency of Higbee, if one existed, is not shown; nor does it appear what authority either Higbee or Cohn had for giving him the information, or what source of knowledge they possessed on the subject. Neither does it appear that Gould had any authority to make any statement as to ownership. The building of the magazine took place many years before the explosion occurred. There appears to have been several transfers of the business with which it was connected before reaching Neff & Stevens. It does not appear in the evidence that these defendant companies agreed to, or were consulted in regard to, the transfers. No attempt was made to prove that the defendants authorized, or assented to, or had any knowledge of, the storage of any powder in the building in question; but, on the part of defendant the California Powder works, it was shown that it not only never authorized nor assented to such storage, but that it had no knowledge whatever of the manner in which Neff & Stevens kept the powder; that they never owned the building, or had any interest in it. Taking the facts as shown on the part of the plaintiff

to be true, the defendants if liable for the damages resulting from the explosion of the powder in question, such liability must attach to them from the fact that they were owners of the powder which was consigned to Neff & Stevens, to be sold by them on commission.

The vital question—that upon which the case hinges—is whether, upon such a state of facts, the NEGLIGENCE: defendant companies stood in relation to damages: re- Neff & Stevens, the parties who stored spondeat superior. the powder in the house, and appears to have had full control of it, so that the maxim, respondeat superior, will apply. The rule is adopted by Wharton, in his Law of Negligence, section 176, in which he quotes as follows: "The principle to be extracted from the cases is said to be that a person, natural or artificial, is not liable for the acts or negligence of another, unless the relation of master and servant, or principal and agent, exist between them, and that when an injury is done by a person exercising an independent employment the person employing him is not responsible to the person injured." Again, in section 183, the same author says: "We strike, when pursuing the distinctions which have been taken by the courts in this relation, on the fundamental principle, elsewhere fully discussed, that, wherever there is liberty to act, there, to the party thus free, liability for a tort committed by him is imputable. If the master is at liberty to act in a particular matter, then the tort is imputable to the master. If the servant is at liberty to act, then, if this liberty be one of entire emancipation in the particular relation of the master's control, the tort is imputable, not to the master, but to the servant." In a very able review of this question in the case of De Forrest v. Wright et al., 2 Mich. 368, the court says: "This greatly vexed question, as an eminent judge has pronounced it, has been very much discussed, not only in the English courts, but in our

own.   The difficulty is in deciding what facts and circumstances legally constitute the relation of master and servant, or under what circumstances one person will be held liable for injuries occasioned by the negligence or unskillfulness of another, employed in his behalf.   To hold that every person, under all circumstances, would be responsible for injuries committed by another person while employed in his behalf, involves an absurdity no one would countenance.   It would create a penalty from which few could escape; for every man is, or ought to be, directly or indirectly, nearly or remotely, engaged in the service, or on behalf, of his fellow-men.   But, from an examination and comparison of the adjudged cases, the rule now seems very clearly to be this: that where the person employed is in the exercise of an independent and distinct employment, and not under the immediate control, direction, or supervision of the employer, the latter is not responsible for the negligence or misdoings of the former.''   So, in the case of Gulzoni v. Tyler, in 64 Cal. 334, which was a suit for damages against the owners of a steamboat, it was proven on the trial that the owners did not have control and management of the boat at the time the damages occurred.   The court says: ''The rule as stated by Shear. & R. Neg., section 501, is that if the owner of property lets or lends it, and transfers the entire possession and control of it to another, the owner is not responsible for the wrongful use or mismanagement of it by the transferee.   Whoever had the exclusive possession, management, and control of the boat, its officers and men, was alone responsible for its mismanagement; and, whether rightfully or wrongfully in such possession, the liability would rest on them alone.   Under the rule, respondeat superior, this must be so.''   The act of the servant is not the act of the master, even in legal intendment or effect, unless the master previously directs or subse-

quently adopts it. Parsons v. Winchell, 5 Cush. 592.

In order to clearly understand the application of the foregoing principle to this case, it may be well to refer more particularly to the evidence as to the relationship as proven. Gould, an agent of the California Powder Works, in 1884 called upon Neff & Stevens, requesting them to take the agency of the company, which they declined, for the reason that they had a large amount of powder of the other company on hand. They desired a certain amount of black powder, which they were short of, which he agreed to have sent to them; and it was sent, and billed as follows:

"TUCSON, ARIZONA, November 11, 1884.
"Messrs. Neff & Stevens, Silver City:
"Bot. of the California Works, 30 California Street. Consigned, 80 kegs blasting, 4.00, $320.00."

It is contended on the part of the plaintiff that this powder was sent as a consignment, to be sold on commission, as other powder belonging to the defendant that had been turned over to them by Cohn, assignee of Crawford. The defendant claims that these eighty kegs was an absolute sale. There was also a letter from one William A. Scott, agent at Tucson, Arizona, dated March 13, 1885, which is as follows:

"Messrs. Neff & Stevens, Silver City, N. M.
"GENTLEMEN: Your favor of the tenth inst. is at hand. Please to send account sales at $4.00 per keg, and send draft on me for 10 per cent of the amount of the same, as if the draft was cash, for so I will count it. The account sales must be at $4.00 per keg, and I need your receipt for the commission of 10 per cent. You are duly credited with account for $16.85.
"Respectfully,
"WM. A. SCOTT, Agent."

The above bill and letter, together with the oral evidence introduced on the trial, clearly show that Neff & Stevens were handling this powder as factors, commission merchants, or consignees. There is no evidence in any way limiting their power as such, or directing the manner of handling it. As factors, under the law, they would have full possession of the goods, with a special property therein. Story Ag., sec. 97.

The court instructed the jury: "If they should find that said black powder was kept and maintained by the defendant or their agents at the time, etc." * * * The word "agent," in the instruction, must be understood in the sense in which it appears from the evidence; and, if instruction number 6, which was asked by the defendant, and refused by the court, had been given, the issues would have been fairly presented to the jury; which instruction was: "If you believe from the evidence that the defendant corporations each owned a portion of the powder stored in the powder house at the time of the explosion, but that such powder and powder house was under exclusive control of Neff & Stevens, as consignees of said corporations, respectively, at the time of the explosion, then, in that case, unless you further believe from the evidence that such explosion was caused by some willful and malicious act of defendant the California Powder Works, you will find the defendant not guilty." The first part of this instruction would have brought the case under the rule laid down by the authorities we have referred to, and which is unquestionably the correct law, as applicable to this case. The evidence does not show anything upon which the doctrine of respondeat superior could be based. So far as the evidence shows, the relationship of Neff & Stevens to the defendant was that of an independent employment, free of action. There is a total lack of all the elements of master and

servant, which must exist to constitute responsibility on the part of the defendant. They were simply factors or consignees for the purpose of selling the goods, and if as such consignees or factors they had the exclusive management and control of the storage of the powder and powder house in question, and the defendants had nothing to do with the storage of the powder in said house, or knowledge that it was so stored, there would be a lacking of every element of responsibility on the part of the defendant. We think the court should have given the first part of this instruction, or instructed the jury in accordance with the views herein expressed. The case will be reversed, and remanded for a new trial.

WHITEMAN and McFIE, JJ., concur.