# KINGMAN & COMPANY
## v.
## JOHN MANN ET AL.

*Practice—Process—Defective Service—Jurisdiction—Vacation of Judgment.*

1. Service of process on one as agent of defendant, who is not in fact its agent, but who mails it a copy of the summons, without the officer's return thereon, with notice that suit has been commenced, is not such service as can give the court jurisdiction.

2. Nor is the sufficiency of the service helped by the fact that plaintiff's attorney wrote to defendant informing it of the suit.

3. In the case at bar this court suggests the mode of procedure on vacation of a judgment obtained without proper service of process.

[Opinion filed May 28, 1890.]

APPEAL from the Circuit Court of Kankakee County; the Hon. N. J. PILLSBURY, Judge, presiding.

Messrs. STEVENS & HORTON and WILLIAM POTTER, for appellant.

Mr. H. K. WHEELER, for appellees.

UPTON, P. J. The bill in this case was filed by the appellant, a corporation created and existing under the laws of this State, having its place of business and location in Peoria, against the appellees, who were residents of Kankakee, in the county of Kankakee, to enjoin perpetually a judgment at law, obtained by the appellees against the appellant under the following circumstances, briefly stated.

Appellant was engaged in the agricultural implement business, at Peoria, in 1886, and had been so engaged for some years prior thereto, and was the agent, for this State, of Russell & Co., manufacturers of traction engines, for the handling and sale thereof.

It had, in the year 1886, a traveling agent, engaged in

selling machines and taking orders for articles manufactured by Russell & Co., whose name was G. J. Ferguson.

At the time above stated P. B. Olmstead was engaged in business on his own account at Kankakee, and dealing in agricultural implements also. In the month of July of that year, Ferguson called upon Olmstead and made inquiry if he knew of any persons in that vicinity desirous of purchasing traction engines, and proposed to pay Olmstead to assist him in finding purchasers, or a purchaser therefor. Olmstead, knowing that the appellees desired to purchase a traction engine, agreed to go with, introduce, aid and assist Ferguson in selling appellees the engine at the price of $1,100, being the regular price, for which service Ferguson was to pay Olmstead $25. This was the only employment or service ever done or performed by Olmstead for or on account of any transaction in which Kingman & Co. were interested, as he testifies. On the 22d of July, 1886, Ferguson, with the assistance of Olmstead, took an order from (appellees) Mann for a traction engine of ten-horse power, etc. By this order the appellees directed the machine and attachments to be shipped in care of P. B. Olmstead, Kankakee, Ill. Appellees agreed to receive the engine, etc., subject to the conditions named in the contract, and pay the charges thereon from the factory, and agreed to pay upon delivery the sum of $1,100, viz., by note, due December 1, 1887, $383; note, due December 1, 1888, $383; note, due December 1, 1889, $334, all with interest from July 15, 1886, at seven per cent.

The Manns received the machine with all the attachments as stipulated, and executed their notes to the appellant pursuant to their agreement. On the day of receiving the engine, for some reason, it was claimed by appellees, the pump of the engine did not work well; a telegram was sent to appellant by appellees, of the following tenor: "Send a man to fix engine; pump failed; at once; answer." Upon the receipt of this appellant sent immediately in answer to the telegram a machinist, named Ritzel, to fix the pump and run the engine. No further complaint was made of any defect in construction or use of the engine, or its attachments, until the 31st of

August, 1886, when a telegram from appellees was received by appellant, viz.: "Pump played; must be fixed at once; answer." Appellant immediately ordered by wire a new pump from the factory of Russell & Co., which was obtained as quickly as possible, placed upon the engine, as is claimed, in a few days, without charge to the appellees. Appellees kept the machine and used it with the attachments, from thence until the hearing below, without further complaint to appellant.

About the time of the maturity of the first note given for the purchase of the engine, a claim was made by the appellees for alleged damages, which it was claimed they had sustained by reason of the delay of a number of days occasioned by the failure of the pump first put upon the engine, as above stated, and the delay consequent upon replacing the same with a new one.

The note not being paid, a judgment was entered thereon by virtue of a power of attorney thereto attached, and execution against the appellees upon that judgment was sent to Kankakee for collection, and was paid by appellees.

Soon thereafter a suit was commenced against the appellant by the appellees, Manns, in the Circuit Court of Kankakee County to the April term thereof, claiming damages therein in the sum of $1,000.

The summons in this suit appellees caused to be served upon P. B. Olmstead, and upon this summons the sheriff of Kankakee county made the following return:

"I have served the within writ by delivering a true copy to Perry B. Olmstead, an agent of Kingman & Co., a corporation of the State of Illinois, the president of said company not being found in my county this 20th day of July, 1888."

At the time of making the service, the sheriff having the summons was told by Olmstead that he was not the agent of Kingman & Co., and had never been such agent. The service was directed to be made by appellees or their attorneys. Olmstead soon after wrote to appellant, stating that the appellees had begun a suit against them, and inclosed a copy of summons left with him, but without any return of the officer thereon.

Whether this letter with its inclosure was in fact received by the appellant does not appear, but the attorney of appellees wrote to appellant that the suit was commenced.

The case was continued to the September term of the court, and no one appearing for appellant, it was tried by a jury, and resulted in a verdict and judgment against appellant for $633.75.

Appellant, as it claims, was not informed of this judgment until after the adjournment of the court, and was therefore prevented from taking any action therein, relying, as it insists, of right, upon the total want of service of process upon it, and a total want of jurisdiction in the court to render any judgment against it in that case.

Appellees threatening to enforce that judgment by execution, appellant filed its bill enjoining its collection, averring therein, in effect, as hereinbefore stated, and that it was not legally or equitably indebted to the appellees (Manns) at any time, or in any sum whatever. The Manns, appellees, answered, which was a traverse of appellant's bill, to which replication was filed, and upon hearing before the chancellor resulted in a decree for the appellees (Manns), and the bill was dismissed with damages at eight per cent. To which decree appellant excepted, prayed an appeal, and the case is before us for review.

We think it clear that Olmstead, upon whom service was had in the suit at law, was not the agent—in law or in fact—at the time of making the attempted service in this suit of the appellant; and the evidence tends strongly to show, as it seems to us, that the appellees knew that fact.

We are also of the opinion that the appellant, Kingman & Co., is not chargeable with negligence in not making a defense to the suit at law. If it be true that the copy of the summons was sent by Olmstead to the appellant, and by it in fact received, that alone would not be notice of anything to require action by the appellant, much less to authorize a judgment against it, for there is no pretense that this copy of summons, if sent, contained any copy of the officer's return thereon, or notice of any pretended service thereof.

It will hardly be contended, we think, that simply leaving a copy of a summons in a suit at law with a third person, who is in no manner connected with, interested in, or liable for, any judgment which may be rendered in such suit, would constitute any legal notice of the pendency of such suit, or sufficient to require action by the adverse party in regard thereto, or to charge such adverse party with legal negligence in failing or neglecting to act. Nor would it be of any avail that the attorney of the appellees had written to appellant that suit had been commenced against them in that behalf.

We are of the opinion under the circumstances shown by this record that appellant, knowing it had no agent in Kankakee county, and that under the statute no service of process could be had upon it in that county, was justified in ignoring the fact (if it was brought to the knowledge of its officers) that a suit had been brought against it in that county. A suit without service of process, or the possibility of service as provided by law, could not harm appellant in any manner, nor without such service could the Circuit Court take jurisdiction to render any judgment against the appellant.

The damages in the suit at law, as claimed by appellees (Manns), were for the alleged loss of thirty days time in August, 1886, on account of the pump to the engine being out of order as above stated.

The evidence is not full or clear upon this subject of the want of equity in the judgment at law, yet the claim for so large damages caused by so short delay seems, on its face, extraordinary, and to us manifests a strong probability of its being, in part at least, unjust and inequitable, and as the question preliminary to opening the judgment at all must first be determined, and decided for or against the appellant, it was not necessary upon this preliminary question to inquire into the equity of the judgment at all, nor was it needful to take the evidence in full upon that question.

If the right to open up the judgment at all had been determined in the appellant's favor, the proper practice, it seems to us, would have been for the court to refer the cause to the master, to take the evidence and report upon the question of

the justice and equity of the judgment in the suit at law, as well as the proper amount thereof to which appellees would be entitled, if anything, or for the chancellor to form an issue in chancery, and submit that issue to a jury to aid the court in its determination upon that question of fact.

This being so, it was not requisite to have taken on that preliminary hearing the evidence in full on that issue of the judgment that would result from the reference.

The decree will therefore be reversed and the cause remanded, with directions to the court below to refer the case to a master, to take and report the proofs and the amount equitably due appellees, if anything, or upon issue made, refer that issue to a jury, as in like cases of chancery practice, for which purpose the decree of the Circuit Court is reversed and the cause remanded.

*Reversed and remanded.*