## Commodore A. Combs v. Hamlin Wizard Oil Company.

1. INJUNCTIONS—*Collection of Judgments.*—Before equity will interfere to enjoin the collection of a judgment at law, it must not only be made to appear that the judgment was rendered without the fault or negligence of the party seeking relief, but also that there is a good and sufficient defense to the suit, so that upon a re-trial of the case the result would be different.

2. JUDGMENTS—*Where Defendant is Not Served with Process.*—Even though a defendant has not been served with process, yet he should not be relieved in equity if the judgment is altogether just.

3. PRACTICE—*Service upon Agents.*—When service of summons is made upon an agent of the defendant in cases where such service is authorized, the principal is liable for the consequences of the agent's negligence in not giving information of such service.

4. SAME—*Service after the Agency has Ceased.*—Service upon a person who has been in the employment of a corporation as its agent, but after his employment as such has ceased, is not sufficient.

5. AGENCY—*When Principal Estopped to Deny.*—When a corporation has suffered a person to hold himself out to the public as its agent, so as to render it inequitable for the apparent agency to be denied, service of process upon such agent will be sufficient.

6. AGENT—*An Independent Contractor is Not—Service of Process.*—An independent contractor with a corporation is not an agent of the corporation in the sense that legal process against the corporation may be served upon him.

**Injunction,** to restrain the collection of a judgment.    Appeal from a decree of the Circuit Court of Marion County; the Hon. ALONZO S. WILDERMAN, Judge, presiding.    Heard in this court at the August term, 1894.    Affirmed.    Opinion filed March 23, 1895.

APPELLANT'S BRIEF, FRANK F. NOLEMAN AND S. L. DWIGHT, ATTORNEYS.

Power to act generally in a particular business, or course of trade in a business, however limited, will constitute a general agency, if the agent is so held out to the world, however restricted his private instructions may be.   Crain et al. v. National Bank, 114 Ill. 516.

A person openly and notoriously exercising the functions of a particular agency of a corporation, will be presumed to have sufficient authority from the corporation to so act. Singer Mfg. Co. v. Holdfodt, 86 Ill. 455.

Corporations can only act by agents, and the law presumes authority in persons who are permitted to act for them.

APPELLEE'S BRIEF, W. F. BUNDY, ATTORNEY.

The rule distinguishing an independent contractor from an agent or servant may be stated as follows:

One who contracts to do a specific piece of work, furnishing his own assistants and executing the work either entirely in accordance with his own ideas or in accordance with a plan previously given to him by the person for whom the work is done, without being subject to the orders of the latter in respect to the details of the work, is clearly a contractor and not a servant; and a person injured by his negligence in its performance would have no right of action against the party for whose benefit the work is done.

The rule has also been stated in this manner:

When a person contracts with another exercising an independent employment or calling and hiring his own servants to do a work, not in itself a nuisance, according to the contractor's own methods and not subject to the control or order of the person for whose benefit the work is done, except as to results to be obtained, the former is not liable for the wrongful acts of such contractor or his servants.   14 Am. & Eng. Ency. Law, 830; Scammon et al. v. City of Chicago, 25 Ill. 424; West v. St. L. & V. T. H. R. R. Co., 63 Ill. 545; Prairie State L. & T. Co. v. Doig et al., 70 Ill. 53; Hale

v. Johnson, 80 Ill. 185; Shearman & Redfield on Neg. (2d Ed.), 92, Sec. 76; Arasmith v. Temple, 11 Brad. 36; Bailey v. T. & B. R. R. Co., 57 Vt. 252; Wadsworth H. Co. v. Foster, 50 Ill. App. 513; Wharton on Neg., Sec. 181; Cooley on Torts, 519; 2 Hilliard on Torts, 537; Addison on Torts, 580; Cincinnati v. Stone, 5 Ohio St. 38; Smith v. Spitz, 31 N. E. Rep. 5; 156 Mass. 319; State v. Swayze, 52 N. J. L. (23 Vroom) 129; Moline v. McKinnie, 30 Ill. App. 419; Cuff, Admx. v. N. & N. Y. R. R. Co., 35 N. J. L. (6 Vroom) 17; Pfau v. Williamson, 63 Ill. 16; Kepperly v. Ramsden, 83 Ill. 354; Chi. City Ry. Co. v. Hennessy, 16 Ill. App. 153; Village of Jefferson v. Chapman, 127 Ill. 444; Alexander v. Mandeville, 33 Ill. App. 598; Mechem on Agency, Sec. 747.

Unless appellee was served with process in the suit at law, in some manner pointed out by the statute, the judgment in that case is void for that reason. The sending of a copy of the summons through the mail is not service of process as contemplated by the statute, and the appellee was not required to respond to such a notice. Kingman & Co. v. Mann, 36 Ill. App. 342.

In cases where the judgment which it is sought to enjoin is void for want of jurisdiction arising from the want of service of process upon defendant, the courts have manifested less reluctance in granting the desired relief than in other classes of cases. Nor is it necessary to show that defend ant in the judgment had a good defense to the action, since, the judgment being void, no presumptions will be indulged in favor of the judgment creditor. High on Inj. (2d Ed.), Sec. 229.

The fact that a person is paid by the day, or month, does not necessarily destroy the independent character of his employment. Mechem on Agency, Sec. 747.

Agency can not be proved by the mere declarations of the alleged agent. Proctor v. Towns, 115 Ill. 138; Mulphany Bank v. Schott, 135 Ill. 655; 1 Am. & Eng. Ency. Law, 351.

MR. PRESIDING JUSTICE SCOFIELD DELIVERED THE OPINION OF THE COURT.

The bill in this case was filed by appellee to enjoin the

collection of a judgment at law for $3,000, rendered by default against appellee and in favor of appellant. The bill alleged that appellee was not served with process in the suit at law, and that it was not indebted to appellant equitably or otherwise. A temporary injunction was granted, and upon the hearing of the cause this injunction was made perpetual.

The decree of the Circuit Court can be sustained only upon the theory that appellee was not in fact served with process, and that appellant had no just cause of action against appellee. Before equity will interfere to enjoin the collection of a judgment at law, it must not only be m..le to appear that the judgment was rendered without the fault or negligence of the party seeking relief, but also that there is a good and sufficient defense to the suit, so that upon a re-trial of the case the result would be different. Even though a defendant has not been served with process, yet he should not be relieved in equity, if the judgment is altogether just. Owens v. Ranstead, 22 Ill. 161; Weaver v. Poyer et al., 70 Ill. 567; Higgins v. Bullock, 73 Ill. 205; Blackburn et al. v. Bell, 91 Ill. 434; Lemon et al. v. Sweeney, 6 Bradw. 507.

Both questions, the first relating to the service of process and the second to the equity of the judgment, may be considered together, inasmuch as they turn alike upon the point whether or not one N. T. Oliver was the agent or servant of appellee after May 2, 1892. If Oliver was such agent, then appellee was duly served by the delivery to the agent of a copy of the summons, and was liable for the consequences of its agent's negligent act. If Oliver was not such agent, then appellee was not served with process, and the judgment is wholly inequitable.

The proper consideration of this question necessitates a brief statement of the facts which appear in the record.

Appellee was incorporated in 1891, for the manufacture and sale of Wizard Oil and certain other panaceas for the " ills that flesh is heir to," and was engaged in that philanthropic and lucrative enterprise in the spring of 1892. N. T. Oliver, sometimes called Dr. Oliver, was and had been

for many years a professional advertiser of patent medicines. When fully equipped with assistants and paraphernalia, he seems to have been charmingly irresistible to the diseased multitude, often selling in one week 150 bottles of patent medicines at $1 per bottle, and realizing during a single evening $40 in ten cent installments from the sale of seats to those who attended his evening entertainments.

Dr. Oliver was not unmindful of those whose legs were abler than their pocket books. Such could enjoy the intellectual feast "without money and without price," if they were willing to stand outside of the space occupied by the chairs provided for the moneyed and aristocratic part of the audience.

The entertainments were usually held in the tent when the weather was agreeable, and in a hall in winter. Under favorable circumstances, the audience numbered from one to two thousand.

The programme was varied, consisting of flirtations, music and eloquent speech. There were solos, duets and quartettes. Dr. Oliver discoursed upon the excellency of his medicines. The hours passed rapidly away, and the doctor and his audience separated, highly pleased with the result of the evening's entertainment. The doctor chinked his cash, and his suffering patient hopefully pressed his bottle of patent medicine to his stomach. Well, the courts would not have been interested in these particulars, but for the fact that Dr. Oliver's band, when parading the streets of Centralia, on May 5, 1892, and discoursing sweet music to the listening crowd as an advertisement of the evening's entertainment, unfortunately frightened appellant's horse, as a result of which appellant was seriously injured.

Thereupon appellant sued appellee and caused the summons to be served on Dr. Oliver, as appellee's agent. Appellee, considering the manner of service, determined that it was not in court, and suffered judgment to be rendered by default in appellant's favor. An execution for the collection of the judgment having been sent to the sheriff of Cook county, where appellee's offices and effects were, this bill was filed to enjoin the collection of the judgment.

The relationship of Dr. Oliver to appellee is divided into two periods—that which preceded and that which followed May 2, 1892, on which day Oliver and appellee entered into a written contract, as the final agreement resulting from certain negotiations by letter, whereby Oliver was to advertise appellee's nostrums, with his concert company, and by the distribution and posting of printed matter, appellee not to be responsible for " any of the salaries or other expenses of any kind incurred by said N. T. Oliver in conducting his business." Oliver's compensation was to consist of such quantity of goods as he might sell up to a limit of $150 in any week, with certain other stipulations which are not material to the point under consideration. The negotiations by letter above mentioned related to an increase of Oliver's salary and of the salaries of certain of his assistants, which appellee refused to grant. Oliver finally proposed to hire and pay his men and run the business on his own responsibility for a certain compensation, and this offer was accepted in the written agreement which took effect on May 2d.

Under this contract, Oliver was an independent contractor, and the business not being unlawful, or a nuisance *per se*, or necessarily dangerous, appellee was not responsible for Oliver's negligent act, and could not be brought into court by the leaving of a copy of the summons with Oliver, as its agent. Mechem on Agency, Sec. 747; Scammon et al. v. The City of Chicago, 25 Ill. 424; West v. St. L., V. & T. H. R. R. Co., 63 Ill. 545; Prairie State L. & T. Co. v. Doig et al., 70 Ill. 52; Hale et al. v. Johnson, 80 Ill. 185; Arasmith v. Temple, 11 Bradw. 39; Wadsworth Howland Co. v. Foster, 50 Ill. App. 513.

The last case cited, and Kingman & Co. v. Mann et al., 36 Ill. App. 338, are particularly instructive as to the questions under consideration. If it be granted that prior to the 2d day of May, Oliver had been appellee's agent, it is certain that the actual agency terminated at that time. If appellee is to be held responsible for Oliver's act after May 2d, it must be upon the theory that the relationship, known to

have once existed, is presumed to have been continued for a reasonable time as to those dealing with appellee, without notice of the change of relationship created by the new contract. But the accident occurred at Centralia, and there is no evidence to show that the citizens of that city, where work was begun by Oliver as an independent contractor, had any knowledge of the prior course of business, or of any statements on the subject of agency made at other localities. The work at Centralia was wholly disconnected from prior work at other points, and no one at that city could have been misled to his injury into thinking an agency existed, when such was not the fact, unless appellee suffered Oliver to hold himself out to the citizens of Centralia as such agent so as to render it inequitable for the apparent agency to be denied.

There was a conflict of the evidence upon this question. The testimony was given orally before the chancellor, who had a better opportunity than a court of review to determine what weight should be given to the testimony of each witness. Besides, the evidence shows that appellee's officers had no knowledge of the fact that Oliver was representing himself as appellee's agent. They knew that he had no right to do so under the existing contract, and had a right to suppose that he would not transcend the limits of his power.

It is also worthy of notice that this is not a case where a fraud has been practiced under cover of a supposed agency, or where a contract has been made upon the supposition, justified by circumstances, that one is the agent of another. In such a case, the party complaining may have been induced by the apparent agency to act as he would not have done under other circumstances, and so as to be injured if the doctrine of estoppel should not be applied.

In the case at bar the injury would have been suffered by appellant whether Oliver was the agent of appellee or not. He was riding along one of the streets of Centralia, and the band frightened his horse. Would he have walked or remained at home, if he had thought Oliver was an independent

contractor? Under these circumstances, where the evidence shows that there was no actual agency, it would be flagrantly unjust to hold appellee responsible for the negligence of Dr. Oliver, because of an inference of agency drawn from a few statements and acts which were not known to appellee and have deceived no one except, perhaps, an occasional purchaser of a bottle of patent medicine.

We think that Oliver was not appellee's agent, in fact or in law, either when the injury was sustained or when service of process was attempted. Therefore the decree of the Circuit Court is affirmed.